UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARCHE MASTER FUND, L.P.<br><br>                  Plaintiff,<br><br>      v.<br><br>XE-R, LLC,<br><br>                 Defendant. | ECF CASE<br><br>Civil Action No. 07-CV-2993<br>(TPG)(AJP) |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND FOR A STAY PENDING ARBITRATION

Jack A. Gordon (JG 0536)
Abbey Green (AG 9293)
KENT, BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
(212) 421-4300

*Attorneys for Defendant*
*XE-R, LLC*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND FACTS ..................................................................................... 2

ARGUMENT .......................................................................................................... 5

    1.     Standard For Summary Judgment Pursuant to Rule 56(b) .................................... 5

    2.     Arche Cannot Demonstrate a Breach ................................................................. 6

        A.     Section 10.1 of the NPA Has Not Been Breached ..................................... 7

        B.     The Alleged Breaches of the XE-R Agreement Must be Arbitrated .......... 9

CONCLUSION ...................................................................................................... 13

Defendant XE-R, LLC ("XE-R") respectfully submits this Memorandum in support of its motion for summary judgment against Plaintiff Arche Master Fund, L.P. ("Arche") pursuant to Fed. R. Civ. P. 56, and to stay whatever remains of this litigation, if anything, pending arbitration pursuant to 9 U.S.C. § 3.

## PRELIMINARY STATEMENT

This is a breach of contract action with no foundation in fact or in law. Arche's claim is predicated both on provisions of a Note Purchase Agreement entered into between XE-R and Arche, dated August 23, 2004 (the "NPA"), as well as a document entitled the "XE-R, LLC Amended and Restated Limited Liability Company Agreement" between XE Capital Management, LLC ("XE Capital") and R 2004, LLC ("R 2004"), dated August 23, 2004, which was further amended by the XE-R, LLC Second Amended and Restated Limited Liability Company Agreement dated December 31, 2004 (collectively, the "XE-R Agreement"). As demonstrated herein, despite Arche's attempts to conjure a breach through tortured interpretations of clear and unambiguous contract provisions, there has been no breach as a matter of law. Moreover, to the extent Arche's claim is predicated on an alleged breach of the XE-R Agreement, the claim (i) must be arbitrated pursuant to the arbitration provision of the XE-R Agreement, and (ii) in any event, is also without merit.

Indeed, this action is just another in a series of legal proceedings commenced by Arche and its affiliates, XE Capital and XE L.I.F.E., LLC ("XE LIFE"), in what appears to be an

attempt to use the pendency of this action as a "fact" in other disputes with XE-R and its management.[1]

Consequently, XE-R seeks (i) summary judgment in its favor and against Arche pursuant to Fed. R. Civ. P. 56 and, (ii) with respect to any allegation of any breach arising out of the XE-R Agreement, a stay pursuant to 9 U.S.C. § 3 pending arbitration of any such dispute in accordance with the arbitration provision in the XE-R Agreement.

## BACKGROUND FACTS

MR&Co. and its predecessors have been in the insurance brokerage business for more than thirty years, and is expert in both the procurement of life insurance policies as well as the brokering of settlements of life insurance policies in the secondary market.

In August of 2004, R 2004, a company formed by MR&Co., and XE Capital[2] formed XE-R for the purpose of, among other things, providing financing for life insurance policies, as

---

[1] XE Capital, the minority member of XE-R, commenced an arbitration proceeding entitled *XE Capital Management, LLC, v. XE-R, LLC, and R 2004, LLC, Mark Ross & Co., Inc. and Mark E. Ross, Respondents* (AAA No. 13 145 Y 02055 06), before the American Arbitration Association on September 12, 2006 alleging breaches of the XE-R Agreement and wrongdoing on the part of XE-R's majority member, R 2004, LLC ("R2004") and its affiliates, Mark Ross & Co., Inc. ("MR&Co.") and Mark Ross. XE LIFE, a wholly-owned subsidiary of XE Capital, commenced a litigation against MR&Co. and Mark Ross entitled *XE L.I.F.E., LLC, v. XE-R, LLC, Mark Ross & Co., Inc. and Mark E. Ross* (Sup. Ct. N.Y. Cty., No. 603579/2006 (RBL)), on October 12, 2006, claiming XE-R has no settlement brokerage rights in connection with a policy financed pursuant to the XE-R Agreement (now consolidated with a later action brought by XE-R against XE Capital and XE LIFE claiming such settlement brokerage rights). Indeed, exploiting a litigation commenced by XE-R, et al., in California, captioned *Toni Y. Jones, in her capacity as Investment Trustee for the Harry L. Jenkins Irrevocable Insurance Trust, Mark Ross & Co., Inc. and XE-R, LLC v. Mutual Credit Corp., Spurling Group LLC, Michael Brown, Anthony Jacobson, and Does 1 through 100* (Sup. Ct. of Ca., Orange Cty., No. 07CC01223 (RLB)), the defendants in that action, one of which was owned 80% by XE Capital through XE LIFE, issued a press release on May 2, 2007, which misleadingly states its allegations here of wrongdoing by XE-R and MR&Co.

[2] XE Capital is the sole member of the investment manager of Arche (*see* Complaint in this action, dated April 13, 2007 ("Compl."), ¶ 3), and, on information and belief, Arche's sole shareholder.

well as offering various options for the ultimate disposition of policies, and brokering the settlement of policies in the secondary market.  (*See* Defendant's Rule 56.1 Statement of Undisputed Material Facts, dated May 21, 2007 ("R. 56.1 St."), ¶ 16.)

Section 2.2 (a) of the XE-R Agreement states that the purposes of XE-R include, among other things, "to originate loans collateralized by life insurance policies ("Loans")," and "to broker life settlements of policies and receive compensation related to such brokerage" and to "transact the foregoing ... with policy owners on a direct basis with [MR&Co.] and [XE-R] as co-brokers ... ."  (R. 56.1 St., Ex. B, §§ 2.2(a)(i), (v), (vi) and (vii).)  It is, thus, fully appropriate for MR&Co. to broker life settlements of policies financed through Loans made by XE-R.

The NPA and the XE-R Agreement were entered into simultaneously as part of the transaction documents executed by the parties to conduct the business of the XE-R joint venture.  (*Compare* R. 56.1 St., Ex. A, *with id.*, Ex. C.)  XE-R borrowed a total of $30,000,000 from Arche and tendered notes pursuant to the NPA, which are otherwise due and payable on August 21, 2009.  Arche now alleges breaches of the NPA and XE-R Agreement resulting in a default under the NPA which purportedly entitles it to accelerate the notes.  (Compl., ¶¶ 36-39.)  Arche claims it is entitled to principal and interest amounting to $31,125,000, and seeks a judgment in its favor in that amount.  (*Id.*, ¶ 47.)

Arche filed this action on April 13, 2007, just one day after XE-R and its counsel were provided with an unsigned fax, purporting to be from Plaintiff's counsel but bearing no letterhead and appearing to be a draft, claiming a default under the NPA and demanding immediate payment of sums due under the notes subject to the NPA.  (R. 56.1 St., Ex. D.)  In

3

other words, Plaintiff commenced this action before providing any actual notice of default. Indeed, the signed notice letter on counsel's letterhead (*see id.*, Ex. E) was not received by XE-R until the morning of April 17, 2007, **a day after** XE-R was served with the Complaint in this action.

In any event, the notice letter claims defaults under the NPA and entitlement to acceleration of the notes subject to the NPA as a result of alleged breaches of the NPA and the XE-R Agreement. The conduct complained of is based on statements made by MR&Co. and XE-R in another litigation pending in California.[3] Those statements concern the refinancing by XE-R of a certain life insurance policy held by a trust known as the Jenkins Trust in an agreement with that trust whereby MR&Co. would broker any settlement of that policy in the secondary market (the "Jenkins Transaction"). In its complaint, Arche describes this arrangement as a violation of § 10.1 of the NPA which prohibits XE-R from engaging in transactions with an affiliate on terms less favorable than would be expected in a comparable arm's-length transaction with a non-affiliate. (Compl., ¶¶ 31-36.)

On April 17, 2007, XE-R, through counsel, provided a detailed letter in response to the notice letter of that date (*see* R. 56.1 St., Ex. F) explaining why the conduct complained of is not a default under the NPA, and further explaining that XE-R's conduct comports with the provisions of both the NPA and the XE-R Agreement, was reasonable and fair, and inured to the economic benefit of Arche. (*Id.*) More specifically, XE-R expressly advised counsel for Arche that the XE-R Agreement has always intended that MR&Co. would act as a co-broker with XE-

---

[3] That litigation is the *Jones/Jenkins* lawsuit referenced *supra* n.1. (*See* R. 56.1 St., Ex. I.)

4

R as set out in § 2.2(a)(vii); R 2004 has acted in a good faith and commercially reasonable manner; the Jenkins Transaction is not a wholesaler transaction and, therefore, not subject to § 3.6(a)(iv) of the XE-R Agreement, and, finally, MR&Co. intends to provide a one hundred percent (100%) participation to XE-R in any settlement brokerage commission in connection with the Jenkins Transaction. Based on this fulsome explanation, counsel also warned that, as the Complaint was baseless, XE-R would be seeking sanctions if Arche did not voluntarily withdraw the action.[4]

Despite XE-R's explication that the lawsuit is baseless, and its request that Arche withdraw the suit, Arche has refused voluntarily to withdraw this frivolous action.

## ARGUMENT

**1.    Standard For Summary Judgment Pursuant to Rule 56(b)**

A party is entitled to summary judgment when there is no "genuine issue of material fact and the undisputed facts warrant judgment for the moving party as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Although the Court must "view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in its favor," *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the Court is to determine whether any disputed issue of material fact exists. *Balderman v. United States Veterans Admin.*, 870 F.2d 57, 60 (2d Cir. 1989). Not every disputed factual issue is material in light of the substantive law that

---

[4] We are presently preparing, and will shortly be providing to Arche's counsel, our proposed motion for sanctions pursuant to the "advance warning" provision of Fed. R. Civ. P. 11(c)(1)(A).

governs the case.  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. 248.

Further, although the moving party has the initial burden of showing an absence of a disputed issue of material fact, *Celotex v. Catrett*, 477 U.S. 317, 323 (1986), the non-moving party must then present "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), and "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).  Indeed, Rule 56 requires that summary judgment be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  As demonstrated herein, the facts underlying this matter require that summary judgment be granted.

Arche cannot prevail, as a matter of law, on its claim for breach of contract.  To prevail on a cause of action for breach of contract, New York law requires that a party show "(1) the existence of a contract, (2) performance by the plaintiff, (3) a breach by the defendant, and (4) damages resulting from that breach." *Arrouet v. Brown Bros. Harriman & Co.*, 2005 U.S. Dist. LEXIS 4327 (S.D.N.Y. March 17, 2005).

## 2.    Arche Cannot Demonstrate a Breach

As set forth in its Complaint, Arche premises a default of the NPA on three separate breaches:  Section 10.1 of the NPA, and §§ 3.6(a)(ii) and (iv) of the XE-R Agreement, which latter alleged breaches, they assert, trigger a default pursuant to §§ 11(c) and (d) of the NPA.  (Compl., ¶¶ 36, 38-40.)  Arche's Complaint, however, fails because Arche cannot demonstrate

that a default has been triggered under the NPA pursuant to any of the cited provisions and there are no underlying facts in dispute which support such a contention.

### A.    Section 10.1 of the NPA Has Not Been Breached

Section 10.1 of the NPA provides:

> [XE-R] will not ... enter into directly or indirectly any transaction or group of related transactions ... with any Affiliate ... except for the Services Agreement ... and except in the ordinary course and pursuant to the reasonable requirements of [XE-R's] business and upon fair and reasonable terms no less favorable to [XE-R] ... than would be expected to be obtainable in a comparable arm's-length transaction with a Person not an Affiliate.

(R. 56.1 St., Ex. C, § 10.1).

The Complaint asserts that the fact that XE-R's affiliate, MR&Co., entered into the Jenkins Transaction, standing alone, constitutes a breach of § 10.1 of the NPA. (Compl., ¶¶ 18, 19, 31-36.) The language of § 10.1, however, is clear and unambiguous, and provides that XE-R can enter into transactions with Affiliates "in the ordinary course and pursuant to the reasonable requirements of [XE-R's] business and **upon fair and reasonable terms no less favorable to [XE-R] ... than would be expected to be obtainable in a comparable arm's-length transaction with a Person not an Affiliate.**" (R. 56.1 St., Ex. C, § 10.1 (emphasis added).) The key term here is obvious – that XE-R not engage in transactions with its affiliates that somehow deprive XE-R of the fair economic benefits to which it is entitled. The intent is not to keep XE-R from transacting with its affiliates in accordance with the stated purposes of the joint venture (*i.e.*, §§ 2.2(a)(i) ("to originate loans collateralized by life insurance policies ..."); 2.2(a)(v) ("to broker life settlements of policies and receive compensation related to such

7

brokerage"); 2.2(a)(vi) (to transact in life settlements); and 2.2(a)(vii) ( "to transact the foregoing ... on a direct basis with [MR&Co.] and [XE-R] as co-brokers ...")), but, rather, to ensure that XE-R will benefit from any transaction with an affiliate on the same terms that it would benefit from a transaction with a non-affiliate.  In other words, it is the clear intent of the parties that XE-R may lend money to an insured's trust, collateralized by the insured's life insurance policy. It is equally clear that MR&Co. may enter into life settlement brokerage agreements.  This is exactly what occurred with the Jenkins Transaction, and this is precisely what is alleged in the *Jones/Jenkins* case.  In short, there were no breaches as a result of the Jenkins Transaction.

To be in breach of § 10.1 of the NPA, XE-R would have to enter into a transaction with an affiliate upon ***terms less favorable*** to XE-R than would be expected in a comparable arm's-length transaction with a non-affiliate.  However, the terms of the Jenkins Transaction could not be more favorable to XE-R.  Indeed, XE-R's managing member, R 2004, and MR&Co., the life settlement broker, have represented, through counsel, that XE-R will receive a one hundred percent (100%) participation in MR&Co.'s share of any such brokerage commissions.[5] Consequently, the transaction not only falls squarely within the parameters of XE-R's stated business purposes, but has been entered into on terms far more favorable to XE-R than could possibly be expected with a non-affiliate.

Given the fairness of the terms of the transaction and the benefit springing from those terms which inures to XE-R and XE-R only, § 10.1 of the NPA was not – and could not be –

---

[5] Section 3.6(v) of the XE-R Agreement contemplates only that the Managing Member "provide the Company with participation in its retail (direct) transactions," including life settlements.  As the settlement of the Jenkins policy is a "direct" transaction rather than a wholesale transaction, R 2004 has discretion to choose the appropriate level of participation for XE-R in the brokerage commissions. (R. 56.1 St., Ex. B, § 3.6(v).)

breached as a result of XE-R's involvement in the Jenkins Transaction.  Accordingly, the default provision in § 11(c) of the NPA has not been triggered, and Arche may not resort to § 12.1(b) of the NPA to accelerate the notes.  Consequently, summary judgment in favor of XE-R should be granted as to the alleged breach of § 10.1 of the NPA.  *Celotex*, 477 U.S. at 323.

### B.    The Alleged Breaches of the XE-R Agreement Must be Arbitrated

Arche also premises defaults under the NPA on breaches of §§ 3.6(a)(ii) and (v) of the XE-R Agreement.  (Compl., ¶¶ 37-39.)[6]  The question whether there has been a breach of the XE-R Agreement, however, must be arbitrated pursuant to § 12.13 of that document, which provides:

> Arbitration.  Each of the parties hereto agrees that any dispute, controversy or claim arising out of or related to this Agreement, or any transactions contemplated herein, including, without limitation, whether such controversy or claim is subject to arbitration, shall be finally resolved by binding arbitration held in New York, New York, in accordance with the domestic arbitration rules of the American Arbitration Association, except as may be modified by this Section 12.13 or by mutual agreement of the parties to such dispute, claim or controversy.

(R. 56.1 St., Ex B.)

This arbitration provision is considerably broad and encompasses all disputes, controversies or claims not only "arising out of" the Agreement but also those "related to" the Agreement.  Consequently, any issue of a breach of the Agreement is subject to arbitration,

---

[6] Arche also claims a breach of § 9.7(f) of the NPA (Compl., ¶ 39 ), which requires that XE-R "conduct its affairs strictly in accordance with its LLC Agreement" and maintain its LLC formalities as the customary predicate for operating its business pursuant to the XE-R Agreement.  That section is irrelevant and no breach of it is cited in the Complaint.  In any event, since a breach would *de facto* require a finding of a breach of the XE-R Agreement, it must be arbitrated.

including the breaches alleged by Arche as a predicate for its allegation of a default under the NPA.

The arbitration clause encompasses not only the subject matter of any alleged breach, but the parties to this action as well. As an initial matter, the managing member of XE-R, R 2004 is a signatory to the XE-R Agreement, and the arbitration clause expresses the intent of the members of XE-R that any alleged breach be arbitrated.

Arche, a non-signatory, is also subject to the arbitration provision under at least two theories articulated by the courts. Under the estoppel theory, "a company knowingly exploiting an agreement with an arbitration clause can be estopped from avoiding arbitration despite having never signed the agreement." *See, e.g., Mag Portfolio Consult, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001). Arche is certainly exploiting and obtaining a direct benefit from the XE-R Agreement pursuant to its interest in the notes, from which it derives substantial benefits. As a party to the NPA, Arche is also one of the parties to the group of "Transaction Documents" executed simultaneously on August 23, 2004, which created XE-R and provided the mechanisms for operating and supporting its business. (R. 56.1 St., Exs. A, C.)

Equally important, "a nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause," and where the arbitration clause is broad enough to encompass the issue. *Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506, 520 (S.D.N.Y. 2001). As the NPA specifically incorporates by reference the XE-R Agreement and the performance of XE-R under that agreement, Arche should be compelled to arbitrate. (R. 56.1 St., ¶ 21.) This is particularly

10

true where, as here, the arbitration clause is of the broadest type, encompasses the issue, and does not specifically restrict arbitration only to signatories. In sum, Arche, XE Capital's wholly-owned subsidiary, should not be allowed to circumvent the requirement that any breach of the XE-R Agreement be arbitrated. Since its claims of a default under the NPA are predicated on a breach of the XE-R Agreement, and since any such breach must be determined in arbitration, the claim alleging default is premature, and must be stayed pursuant to 9.U.S.C. § 3 pending a determination in arbitration.[7]

Finally, even if the Court decides to examine whether there were breaches of the XE-R Agreement, despite the fact that such determinations are for arbitrators,[8] no breaches exist. Section 3.6(a)(ii) of the XE-R Agreement provides:

> In managing the Company, the Managing Member will at all times act in accordance with applicable law and in a good faith and commercially reasonable manner.

(R. 56.1 St., Ex. B., § 3.6(a)(ii).)

As discussed above, MR&Co.'s involvement in the Jenkins Transaction is on the most favorable terms to XE-R, and the entire economic benefit will inure to XE-R. Consequently, the Jenkins Transaction is a transaction in the utmost good faith. Put another way, as the terms

---

[7] Arche is fully aware of the fact that there is an arbitration already pending between the parties to the XE-R Agreement. Indeed, Arche's counsel here is also XE Capital's counsel in the arbitration (R. 56.1 St., ¶ 24) and the arbitration proceeding is even referenced in the Complaint. (*See* Comp., ¶¶ 41-42.) Tellingly, the very conduct complained of in those paragraphs is claimant's "centerpiece" in the pending arbitration.

[8] XE-R expressly reserves its right to arbitrate this matter, despite advancing this argument on this Point.

11

could not be more favorable to XE-R, the Jenkins Transaction is not just commercially reasonable, it affords XE-R an extraordinary commercial benefit.

Arche's claim of a breach of § 3.6(a)(iv) of the XE-R Agreement (Compl., ¶ 38) fares no better.  Section 3.6(a)(iv) provides:

> [XE-R] will be the exclusive means by which the Managing Member and its Affiliates transact as a wholesaler through other life insurance brokers and intermediaries as to the transactions listed in Section 2.2.  [Section 2.2 sets forth the transactions for which the joint venture was created.]

(R. 56.1 St. Ex. B, § 3.6(a)(iv).)

As noted, the above exclusivity provision is not applicable to the Jenkins Transaction. MR&Co. is in privity with the Jenkins Trust, and the settlement of the policy held by the Jenkins Trust is not a "wholesaler" transaction, which is a transaction that utilizes "other life insurance brokers and intermediaries."  Consequently, since any settlement by MR&Co. of the policy held by the Jenkins Trust necessarily would be a direct transaction, § 3.6(a)(iv) is inapplicable.

More importantly, even if § 3.6(a)(iv) were applicable, as noted, XE-R is to receive one hundred (100%) percent of any settlement brokerage commission otherwise earned by MR&Co., and, thus, no breach has occurred.

Accordingly, these alleged breaches must be arbitrated before a default can be called.  In arbitration, Arche will be unable to show a breach of the XE-R Agreement as a result of the Jenkins Transaction, and there is no predicate for a default under the NPA.

## CONCLUSION

For the reasons and on the authorities set forth above and in the prior proceedings had herein, XE-R respectfully requests that its motion for summary judgment and/or to stay litigation pending arbitration be granted in its entirety.


Dated: New York, New York
       May 21, 2007

KENT, BEATTY & GORDON, LLP

By: _Jack A. Gordon_
Jack A. Gordon, Esq. (JG 0536)
Abbey Green, Esq. (AG 9293)
425 Park Avenue, The Penthouse
New York, NY 10022
(212) 421-4300

*Attorneys for Defendant,*
*XE-R, LLC*

13