# Exhibit D

WRITER'S DIRECT DIAL NO.
(212) 849-7171

WRITER'S INTERNET ADDRESS
petercalamari@quinnemanuel.com

April 12, 2007

**BY HAND AND BY REGISTERED MAIL**

XE R, LLC
c/o Mark Ross & Co., Inc.
400 Park Avenue, 18 h Floor
New York, NY 10022

R 2004, LLC
c/o Mark Ross & Co., Inc.
400 Park Avenue, 18 h Floor
New York, NY 10022

Attention:  Mark E. Ross

Re:    **Notice of Default**

Dear Mark:

We write on behalf of Arche Master Fund, L.P. ("Arche") and refer to (i) the XE–R, LLC Note Purchase Agreement, dated August 23, 2004 (the "Note Purchase Agreement"), among XE–R, LLC ("XE–R" or the "Company") and the note purchasers party thereto (the "Purchasers") and (i ) the XE–R Second Amended and Restated Limited Liability Company Agreement (the "XE–R Agreement"), dated as of December 31, 2004, among R 2004, LLC, as the managing member of the Company and XE Capital Management, LLC ("XE Capital"), as the non–managing member.  Terms used herein without definition shall have the meanings set forth in the Note Purchase Agreement or the XE–R Agreement, as applicable.

As you know, the Note Purchase Agreement expressly governs XE-R's transactions with its affiliates. §10.1. Pursuant to §10.1, XE-R covenants that "so long as any of the Notes are outstand ng[,]" it "will not ... enter into directly or indirectly any transaction or group of related transactions ... with any Affiliate ... except for the Services Agreement ... and except in the ordinary course and pursuant to the reasonable requirements of the Company's ... business and upon fair and reasonable terms no less favorable to the Company ... than would be expected to be obtainable in a comparable arm's-length transaction with a Person not an Affiliate."

As you also know, Section 2.2(a)(v)–(vi) of the XE-R Agreement provides that the Company was formed "to broker life settlements of policies and receive compensation related to such brokerage" and to "purchase in-force policies and 'bank' them on a short-term basis to facilitate life settlement of such policies to settlement companies or investment funds." Section 3.6(a)(iv) of the XE-R Agreement therefore provides that "the Company will be the *exclusive means* by which the Managing Member and its Affiliates transact as a wholesaler through other life insurance brokers and intermediaries as to the transactions listed in Section 2.2" (emphasis added). Indeed, you have invoked a comparable exclusivity provision in the XE-R Agreement on behalf of XE-R in a pending litigation against XE Capital and XE L.I.F.E., LLC.

Notwithstanding these covenants in the Note Purchase Agreement and the XE-R Agreement, Arche has learned that you are expending XE-R's capital to refinance premium finance notes secured by life insurance policies in exchange for granting Mark Ross & Co., Inc. the right to broker any future settlement of those policies. *See* Complaint in *Toni Y. Jones et al. vs. Mutual Credit Corporation et al.*, Case No. 07-CC01223 (Cal. Sup. Ct. 2007) (the "MCC Complaint"). Specifically, in the MCC Complaint, you allege that:

> XE-R provided [to the Trust] the funds for the payment [of the principal plus interest on the premium finance loan]. In consideration of its provision of valuation and other services, the Trust agreed to appoint Mark Ross & Co., Inc. as the broker of record in the event that the Trust later decided to sell the Policy on the secondary market through a life settlement, (*id.* ¶ 31);

> Defendants ... knew that there was an existing contract and business relationship between XE-R, Mark Ross & Co., Inc. and the Trust, through which XE-R would help the Trust repay the MCC loan and obtain a release of MCC's collateral assignment. The Trust, through XE-R's refinancing, would be able to maintain ownership of the Policy. In the event that the Trust later decided to sell the policy, the Trust could negotiate a life settlement on the secondary market using Mark Ross & Co., Inc. as the broker, (*id.* ¶ 50); and

> Defendants ... knew that the Trust intended to repay the MCC loan and obtain a release of MCC's collateral assignment through financing from XE-R ... In the event that the Trust later decided to sell the policy, the Trust could negotiate a life settlement on the secondary market using Mark Ross & Co., Inc. as the broker, (*id.* at ¶ 54).

2

You are hereby notified that by virtue of the actions admitted above in paragraphs 31, 50, and 54, XE-R is engaged in prohibited transactions with an Affiliate in violation of §10.1 of the Note Purchase Agreement and has thereby triggered an immediate Event of Default under §11(c) of that agreement.

In addition, by extending XE-R funds in exchange for securing business opportunities for Mark Ross & Co., Inc., you are in violation of your covenant to use XE-R as the exclusive vehicle for brokering the life settlements of policies in the secondary market as well as your covenant to act in a good faith and commercially reasonable manner. *See* XE-R Agreement §3.6(a)(iv), §3.6(a)(ii). Your failure to comply with the XE-R Agreement will trigger a separate Event of Default under §11(d) of the Note Purchase Agreement if not cured within thirty days.

Please be advised that based on an Event of Default having occurred under §11(c), Arche, as holder of 100% of the outstanding Notes issued by the Company as of the date hereof, hereby declares all outstanding Notes immediately due and payable under §12.1(b) of the Note Purchase Agreement and demands immediate payment of the total amount due and owing on such Notes. In addition, Arche intends to exercise any and all rights available to it under §12.2 of the Note Purchase Agreement.

Sincerely,

Peter Calamari

cc:    Harry C. Beatty, Esq. (By facsimile)
       Michael A. Lynn, Esq. (By facsimile)

# Exhibit E

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7171**

WRITER'S INTERNET ADDRESS
**petercalamari@quinnemanuel.com**

April 12, 2007

**BY HAND AND BY REGISTERED MAIL**

XE–R, LLC
c/o Mark Ross & Co., Inc.
400 Park Avenue, 18th Floor
New York, NY 10022

R 2004, LLC
c/o Mark Ross & Co., Inc.
400 Park Avenue, 18th Floor
New York, NY 10022

Attention:  Mark E. Ross

Re:    <u>Notice of Default</u>

Dear Mark:

　　　　We write on behalf of Arche Master Fund, L.P. ("Arche") and refer to (i) the XE–R, LLC Note Purchase Agreement, dated August 23, 2004 (the "Note Purchase Agreement"), among XE–R, LLC ("XE–R" or the "Company") and the note purchasers party thereto (the "Purchasers") and (ii) the XE–R Second Amended and Restated Limited Liability Company Agreement (the "XE–R Agreement"), dated as of December 31, 2004, among R 2004, LLC, as the managing member of the Company and XE Capital Management, LLC ("XE Capital"), as the non–managing member.  Terms used herein without definition shall have the meanings set forth in the Note Purchase Agreement or the XE–R Agreement, as applicable.

**quinn emanuel urquhart oliver & hedges, llp**

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-601-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

As you know, the Note Purchase Agreement expressly governs XE–R's transactions with its affiliates. §10.1. Pursuant to §10.1, XE–R covenants that "so long as any of the Notes are outstanding[,]" it "will not ... enter into directly or indirectly any transaction or group of related transactions ... with any Affiliate ... except for the Services Agreement ... and except in the ordinary course and pursuant to the reasonable requirements of the Company's ... business and upon fair and reasonable terms no less favorable to the Company ... than would be expected to be obtainable in a comparable arm's–length transaction with a Person not an Affiliate."

As you also know, Section 2.2(a)(v)–(vi) of the XE–R Agreement provides that the Company was formed "to broker life settlements of policies and receive compensation related to such brokerage" and to "purchase in–force policies and 'bank' them on a short–term basis to facilitate life settlement of such policies to settlement companies or investment funds." Section 3.6(a)(iv) of the XE–R Agreement therefore provides that "the Company will be the *exclusive means* by which the Managing Member and its Affiliates transact as a wholesaler through other life insurance brokers and intermediaries as to the transactions listed in Section 2.2" (emphasis added).   Indeed, you have invoked a comparable exclusivity provision in the XE–R Agreement on behalf of XE–R in a pending litigation against XE Capital and XE L.I.F.E., LLC.

Notwithstanding these covenants in the Note Purchase Agreement and the XE–R Agreement, Arche has learned that you are expending XE–R's capital to refinance premium finance notes secured by life insurance policies in exchange for granting Mark Ross & Co., Inc. the right to broker any future settlement of those policies. *See* Complaint in *Toni Y. Jones et al. vs. Mutual Credit Corporation et al.*, Case No. 07–CC01223 (Cal. Sup. Ct. 2007) (the "MCC Complaint").  Specifically, in the MCC Complaint, you allege that:

> XE–R provided [to the Trust] the funds for the payment [of the principal plus interest on the premium finance loan].  In consideration of its provision of valuation and other services, the Trust agreed to appoint Mark Ross & Co., Inc. as the broker of record in the event that the Trust later decided to sell the Policy on the secondary market through a life settlement, (*id.* ¶ 31);

> Defendants ... knew that there was an existing contract and business relationship between XE–R, Mark Ross & Co., Inc. and the Trust, through which XE–R would help the Trust repay the MCC loan and obtain a release of MCC's collateral assignment.  The Trust, through XE–R's refinancing, would be able to maintain ownership of the Policy.  In the event that the Trust later decided to sell the policy, the Trust could negotiate a life settlement on the secondary market using Mark Ross & Co., Inc. as the broker, (*id.* ¶ 50); and

> Defendants ... knew that the Trust intended to repay the MCC loan and obtain a release of MCC's collateral assignment through financing from XE–R ... In the event that the Trust later decided to sell the policy, the Trust could negotiate a life settlement on the secondary market using Mark Ross & Co., Inc. as the broker, (*id.* at ¶ 54).

2

You are hereby notified that by virtue of the actions admitted above in paragraphs 31, 50, and 54, XE–R is engaged in prohibited transactions with an Affiliate in violation of §10.1 of the Note Purchase Agreement and has thereby triggered an immediate Event of Default under §11(c) of that agreement.

In addition, by extending XE–R funds in exchange for securing business opportunities for Mark Ross & Co., Inc., you are in violation of your covenant to use XE–R as the exclusive vehicle for brokering the life settlements of policies in the secondary market as well as your covenant to act in a good faith and commercially reasonable manner. *See* XE–R Agreement §3.6(a)(iv), §3.6(a)(ii). Your failure to comply with the XE–R Agreement will trigger a separate Event of Default under §11(d) of the Note Purchase Agreement if not cured within thirty days.

Please be advised that based on an Event of Default having occurred under §11(c), Arche, as holder of 100% of the outstanding Notes issued by the Company as of the date hereof, hereby declares all outstanding Notes immediately due and payable under §12.1(b) of the Note Purchase Agreement and demands immediate payment of the total amount due and owing on such Notes. In addition, Arche intends to exercise any and all rights available to it under §12.2 of the Note Purchase Agreement.

Sincerely,

*Peter Calamari*

Peter Calamari

cc:     Harry C. Beatty, Esq. (By facsimile)
        Michael A. Lynn, Esq. (By facsimile)

3

# Exhibit F

# KENT, BEATTY & GORDON, LLP

### ATTORNEYS AT LAW
425 PARK AVENUE
NEW YORK, NY 10022-3598

TELEPHONE
(212) 421-4300

TELECOPIER
(212) 421-4303

JACK A. GORDON
ADMITTED IN N.Y. AND N.J.

WEBSITE
www.KBG-law.com

E-MAIL
JAG@KBG-law.com

April 17, 2007

***Via Email, Facsimile (212-836-8689) and First Class Mail***
Peter Calamari, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
51 Madison Avenue, 24th Floor
New York, NY 10010

Re:    XE-R Notice of Default and *Arche Master Fund, L.P. v. XE-R, LLC*, No. 07-CV-2993 (S.D.N.Y.)(Greisa, J.)

Dear Peter:

We write in response to your demand letter addressed to XE-R, LLC ("XE-R") and R 2004, LLC, dated April 12, 2007, alleging defaults under the XE-R, LLC Note Purchase Agreement, dated August 23, 2004 (the "Note Purchase Agreement") and a breach of the XE-R, LLC Second Amended and Restated Limited Liability Company Agreement, dated as of December 31, 2004 (the "XE-R Agreement").

As an initial matter, we are surprised to receive a communication from you on behalf of Arche Master Fund, L.P. ("Arche"), as Arche, in the past, has been represented by Debevoise & Plimpton LLP, from which firm we have received many communications on behalf of Arche. Accordingly, we ask whether Darius Tencza, Esq. of Debevoise & Plimpton LLP still represents Arche. We note also that the faxed demand letter was both unsigned and *sans* letterhead and, consequently, might well have been a draft. However, in light of the fact that your offices served XE-R late yesterday with a lawsuit captioned *Arche Master Fund, L.P. v. XE-R, LLC*, No. 07-CV-2993 (S.D.N.Y.)(Griesa, J.) (the "Lawsuit") alleging the same defaults, we feel it prudent to respond to your letter and the Lawsuit.

Your assertion that there have been events constituting defaults is misguided and the Lawsuit is frivolous.

KENT, BEATTY & GORDON, LLP
ATTORNEYS AT LAW

Peter Calamari, Esq.
Quinn Emanuel Urquhart Oliver & Hedges, LLP
April 17, 2007
Page 2

To explain, § 2.2(a)(v) of the XE-R Agreement contemplates that XE-R shall, *inter alia*, "broker life settlements of policies and receive compensation related to such brokerage" in accordance with § 2.2(a)(vii) thereof, which section specifically contemplates that XE-R transact in life settlements "with policy owners on a direct basis with MRC and the Company as co-brokers ... ." Accordingly, it was and remains appropriate for Mark Ross & Co., Inc. to be the designated broker in connection with the settlement brokerage of the policy held by the Jenkins Trust (the "Jenkins Transaction").

Further, there has been no breach of §§ 3.6(a)(ii) and (iv) of the XE-R Agreement. First, the Managing Member has acted in a "good faith and commercially reasonable manner" as required by 3.6(a)(ii). Second, the exclusivity provision of § 3.6(a)(iv) is not applicable since Mark Ross & Co., Inc. is in privity with the Jenkins Trust, and settlement of the policy held by the Jenkins Trust would not be a "wholesaler" transaction. Moreover, § 3.6(v) of the XE-R Agreement contemplates only that the Managing Member "provide the Company with participation in its retail (direct) transactions," including life settlements. Accordingly, as the settlement of the Jenkins policy is a "direct" transaction rather than a wholesale transaction, R 2004 has discretion to choose the appropriate level of participation for XE-R. The level of participation as to compensation to XE-R typically would be governed by XE-R's level of participation in the transaction itself. However, although Mark Ross & Co., Inc. reserves its right to determine the appropriate level of XE-R participation for any other direct cases, it hereby represents that it will provide a participation to XE-R of one hundred percent (100%) of any settlement brokerage commission in connection with the Jenkins Transaction, as it has always intended. Consequently, exclusivity is not an issue.

For these same reasons, the Jenkins Transaction does not trigger a violation of §10.1 of the Note Purchase Agreement. Indeed, a life settlement transaction of the Jenkins policy through Mark Ross & Co., Inc. is in harmony with the parties' joint venture and the Note Purchase Agreement, and the terms of the Jenkins Transaction could not be more favorable to XE-R.

In this latter regard, we would like to take this opportunity to note that, unlike your clients in the New York-based litigation mentioned in your letter,[1] our clients intend fully to comply with the provisions of the XE-R Agreement, and with their obligations to their joint venture partners, all in the spirit of good faith and fair dealing. On a related front, we find it troubling that your firm, on its public

---

[1] You state: "Indeed, you have invoked a comparable exclusivity provision in the XE-R Agreement on behalf of XE-R in a pending litigation against XE Capital and XE L.I.F.E., LLC." That litigation is captioned *XE Capital Management, LLC and XE L.I.F.E., LLC v. XE-R, LLC, Mark Ross & Co., Inc. and Mark E. Ross*, Sup. Ct. N.Y. Cty. Index No. 603579/06 (Lowe, J.).

# KENT, BEATTY & GORDON, LLP
### ATTORNEYS AT LAW

Peter Calamari, Esq.
Quinn Emanuel Urguhart Oliver & Hedges, LLP
April 17, 2007
Page 3

website, has characterized defendants in that action as "XE L.I.F.E.'s former joint venture partner[s]." Has there been a dissolution of XE-R about which we are unaware?

In closing, there has been no default under the provisions of Note Purchase Agreement, and no conduct in violation of the provisions of the XE-R Agreement. Accordingly, XE-R and R 2004 reject your demand for immediate payment of the total amounts outstanding on the Notes. XE-R further demands that you immediately withdraw the Lawsuit, or you will leave that entity with little choice but to pursue sanctions against your client and your firm pursuant to Fed. R. Civ. Pro. 11. In this lattermost regard, please let us know by the close of business on Friday, April 20, 2007, whether you will agree to withdraw the Lawsuit. If you decline our invitation, you will cause XE-R to incur unnecessary defense costs that will waste XE-R's assets, which, of course, would waste the assets of your other client, XE Capital Management, LLC.

Very truly yours,

Jack A. Gordon

cc:    Lisa Brogan, Esq., XE-R, LLC
       Julius Rousseau, Esq., Herrick, Feinstein LLP

# Exhibit G

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor. New York, New York  10010 | TEL: (212) 849-7000  FAX: (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7160**

WRITER'S INTERNET ADDRESS
**kevinreed@quinnemanuel.com**

April 20, 2007

**VIA ELECTRONIC MAIL**

Jack A. Gordon, Esq.
Kent, Beatty & Gordon, LLP
425 Park Avenue
New York, NY  10022

Re:    Arche Master Fund, L.P. v. XE-R, LLC, No. 07-CV-2993 (S.D.N.Y.)

Dear Jack:

I write in response to your letter of April 17, 2007 to Peter Calamari and, in particular, to respond to your request that the plaintiff in the above-referenced action withdraw it.  Please be advised that your request is declined.

Very truly yours,

/s/

Kevin S. Reed

09223/2104872.1

**quinn emanuel urquhart oliver & hedges, llp**

09223/2104872.1

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California  90017  | TEL (213) 443-3000  FAX (213) 443-3100
SAN FRANCISCO | 50 California Street. 22nd Floor, San Francisco, California  94111  | TEL (415) 875-6600  FAX (415) 875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560. Redwood Shores, California  94065 | TEL (650) 801-5000  FAX (650) 801-5100

# Exhibit H

**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7171**

WRITER'S INTERNET ADDRESS
**petercalamari@quinnemanuel.com**

September 12, 2006

**VIA REGISTERED MAIL**
**RETURN RECEIPT REQUESTED**

Jack A. Gordon
Kent, Beatty & Gordon, LLP
425 Park Avenue
New York, NY 10022-3598

Re:    Demand for Arbitration

Dear Jack:

Enclosed please find a Demand for Arbitration by XE Capital Management, LLC, a copy of which we submitted today to the American Arbitration Association.

Sincerely,

Peter Calamari

Enclosures

cc:    XE Capital Management, LLC

quinn emanuel urquhart oliver & hedges, llp

LOS ANGELES | 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017 | TEL 213-443-3000 FAX 213-443-3100
SAN FRANCISCO | 50 California Street, 22nd Floor, San Francisco, California 94111 | TEL 415-875-6600 FAX 415-875-6700
SILICON VALLEY | 555 Twin Dolphin Drive, Suite 560, Redwood Shores, California 94065 | TEL 650-601-5000 FAX 650-801-5100
SAN DIEGO | 4445 Eastgate Mall, Suite 200, San Diego, California 92121 | TEL 858-812-3107 FAX 858-812-3336

# Exhibit I



1   David J. McMahon (120891), dmcmahon@barwol.com
    Randall A. Doctor (130215), rdoctor@barwol.com
2   Travis R. Wall (191662), twall@barwol.com
    BARGER & WOLEN LLP
3   650 California Street, 9th Floor
    San Francisco, California  94108-2713
4   Telephone:  (415) 434-2800
    Facsimile:  (415) 434-2533

5

6   Attorneys for Plaintiffs
    TONI Y. JONES, in her capacity as Investment Trustee
    for the HARRY L. JENKINS IRREVOCABLE
7   INSURANCE TRUST, MARK ROSS & CO., INC. and
    XE-R, LLC

8
                    SUPERIOR COURT OF THE STATE OF CALIFORNIA
9
                        IN AND FOR THE COUNTY OF ORANGE
10

11
    TONI Y. JONES, in her capacity as Investment  )   COMPLAINT FOR BREACH OF
12  Trustee for the HARRY L. JENKINS              )   CONTRACT, BREACH OF THE IMPLIED
    IRREVOCABLE INSURANCE TRUST,                  )   COVENANT OF GOOD FAITH AND FAIR
13  MARK ROSS & CO., INC. and XE-R, LLC,          )   DEALING, INTENTIONAL
                                                  )   INTERFERENCE WITH CONTRACT,
14              Plaintiffs,                        )   INTENTIONAL INTERFERENCE WITH
                                                  )   PROSPECTIVE ECONOMIC ADVANTAGE,
15          vs.                                    )   FRAUD BY MISREPRESENTATION,
                                                  )   FRAUD BY CONCEALMENT, NEGLIGENT
16  MUTUAL CREDIT CORPORATION,                    )   MISREPRESENTATION, UNFAIR
    SPURLING GROUP, LLC, MICHAEL                  )   COMPETITION, RESTITUTION AND
17  BROWN, ANTHONY JACOBSON, and                  )   DECLARATORY RELIEF
    DOES 1 through 100, inclusive,                )
18                                                 )
                Defendants.                        )
19  _____           )

20

21

22

23

24

25

26

27

28

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

                                    COMPLAINT

1    Plaintiff Toni Y. Jones, in her capacity as the Investment Trustee for the Harry L. Jenkins

2    Irrevocable Insurance Trust, and plaintiffs Mark Ross & Co., Inc. and XE-R, LLC complain of the

3    above-named defendants as follows:

4    **NATURE OF ACTION**

5    1.    This is an action for breach of contract, breach of the implied covenant of good faith

6    and fair dealing, interference with prospective economic advantage, fraud by misrepresentation,

7    fraud by concealment, negligent misrepresentation, unfair business practices and declaratory relief

8    arising out of a predatory loan scheme designed and operated by defendants Mutual Credit

9    Corporation and Spurling Group, LLC ("Spurling") (Mutual Credit Corporation and Spurling shall

10   be referred to collectively as "MCC"). MCC created a deceptive premium financing "program"

11   through which seniors purchased life insurance policies. MCC failed to make critical disclosures

12   and misrepresented the economic benefits of the transactions in an attempt to overstate the value of

13   the policies by failing to disclose material valuation criteria. MCC's entire program was designed

14   and intended to be operated from inception, and is being operated in an increasingly egregious

15   fashion, in a premeditated attempt to defraud seniors of their insurance policies.

16   2.    Nonrecourse premium financing, when structured and used properly, is a legitimate

17   financial and estate planning tool for seniors and their families. MCC, however, operates its

18   program not to provide legitimate financial planning tools for seniors, but to defraud seniors out of

19   their life insurance policies. The MCC loan documents are contracts of adhesion. The amount of

20   interest charged for MCC's financing depends, in large part, on the amount of contingent interest

21   owing under the loans. The contingent interest amount is calculated based on the "fair market

22   value" of the life insurance policies, as that term is defined in the MCC loan documents. MCC's

23   contracts provide a specific procedure for determining the policies' "fair market value." Depending

24   upon this valuation, the contingent interest could be as low as zero or as high as ten percent of the

25   face value of the applicable policies. At its higher points, the contingent interest component could

26   be greater than the principal loan amount, resulting in "interest" of over 100 percent. MCC never

27   intended to accept valuations that would result in no contingent interest or a small contingent

28   interest. Rather, MCC unfairly manipulates the valuation process so that the contingent interest

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-2-
COMPLAINT

1  component is always as high as possible, effectively precluding seniors from repaying the loan

2  before the maturity date and maintaining ownership of the policies.

**PARTIES**

3      3.      The Harry L. Jenkins Irrevocable Insurance Trust u/a/d December 23, 2004 is and

5  was an irrevocable trust created by Harry L. Jenkins on or about December 23, 2004 ("plaintiff" or

6  the "Trust"). The situs of the Trust is California. Plaintiff Toni Y. Jones is the investment trustee

7  for the Trust.

8      4.      Plaintiff Mark Ross & Co., Inc. is a Florida corporation with its principal place of

9  business in New York.

10     5.      Plaintiff XE-R, LLC ("XE-R") is a Delaware limited liability company with its

11  principal place of business in New York.

12     6.      Defendant Mutual Credit Corporation is a premium finance agency that is

13  incorporated in California. Its principal place of business is in Irvine, California. Plaintiffs are

14  informed and believe that Mutual Credit Corporation was established by the principals of Sierra

15  Life Solutions, LLC, a California insurance broker ("Sierra") and that KBC Financial Products UK

16  Ltd. ("KBC") currently owns Mutual Credit Corporation or certain of its servicing assets.

17     7.      Plaintiffs are informed and believe that defendant Spurling Group, LLC is a

18  Delaware limited liability company with its principal place of business in Irvine, California.

19  Spurling Group, LLC, however, is not listed on the California Secretary of State's website as a

20  company registered to do business in California. Plaintiffs are informed and believe that Spurling

21  was established by the principals of Sierra and that Spurling's original interest holders included

22  XE Capital Management, LLC ("XE Capital") and Arche Master Fund, LLC, which at all relevant

23  times was dominated and controlled by XE Capital. XE-R and XE Capital are separate and distinct

24  entities which do not share common ownership or control. Although XE-R has been involved in a

25  separate joint venture with XE Capital, all of the improper actions of MCC and Spurling were

26  undertaken without XE-R's knowledge or consent. Plaintiffs are further informed and believe that

27  XE Capital and Arche Master Fund, LLC helped implement the MCC financing program and had

28  the authority to approve each transaction that Spurling funded, including the Jenkins Trust

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-3-
COMPLAINT

1  transaction. Plaintiffs are further informed and believe that KBC currently owns Spurling or certain

2  of its assets and/or interests.

3    8.   Defendant Michael Brown is an individual. He is a licensed insurance agent whose

4  principal place of business is in Orange County, California. At all relevant times, defendant Brown

5  was an officer or employee of Mutual Credit Corporation and/or Spurling and acted as a life agent

6  with respect to the insurance policy that the Trust purchased in this case. Brown is also a principal

7  of Sierra whose investment equity in Spurling was used to fund the MCC premium loan program.

8  Pursuant to California Insurance Code section 785, all insurers, brokers, agents, and others engaged

9  in the transaction of insurance owe a prospective insured who is 65 years of age or older, a duty of

10  honesty, good faith, and fair dealing. This duty is in addition to any other duty, whether express or

11  implied, that may exist.

12    9.   Defendant Anthony Jacobson is an individual. He is a licensed insurance agent

13  whose principal place of business is in Orange County, California. At all relevant times, defendant

14  Jacobson was an officer or employee of Mutual Credit Corporation and/or Spurling. Pursuant to

15  California Insurance Code section 785, all insurers, brokers, agents, and others engaged in the

16  transaction of insurance owe a prospective insured who is 65 years of age or older, a duty of

17  honesty, good faith, and fair dealing. This duty is in addition to any other duty, whether express or

18  implied, that may exist. On information and belief, plaintiffs allege that defendant Jacobson had a

19  commission sharing agreement with defendant Brown, which included the sharing of a commission

20  on the life insurance policy that the Trust purchased.

21    10.  The true names and capacities, whether individual, corporate, associate or

22  otherwise, of defendants Does 1 to 100, inclusive, are unknown to plaintiffs at this time, and

23  therefore plaintiffs sue said defendants under section 474 of the California Code of Civil Procedure

24  by such fictitious names, and when the true names of said defendants are ascertained, plaintiffs will

25  move this court for leave to amend this complaint accordingly. These Doe defendants could include

26  major distributors and financial institutions in the insurance and life settlement industries. Plaintiffs

27  are informed and believe and thereon allege that each of the defendants designated herein as Doe is

28  responsible in some manner for the events and happenings referred to herein, and proximately

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-4-
COMPLAINT

1  caused injuries and damages to the plaintiffs as alleged herein.

2       11.  Plaintiffs, on information and belief, allege that all times mentioned herein, each

3  defendant was acting as an agent, servant, or employee of each other defendant, and was acting

4  within the course and scope of said agency and/or employment.

5       12.  Each defendant, with full knowledge, expressly and impliedly ratified the acts of

6  each other defendant in all respects and adopted as his or its own acts the acts of the other

7  defendants and each of them as set forth in detail hereinafter.

8  **VENUE**

9       13.  The Trust obtained nonrecourse financing from MCC relating to the purchase of a

10  life insurance policy.  The loan documents provide that any legal proceeding related to this

11  financing arrangement shall be brought and litigated in the United States District Court for the

12  Central District of California, to the extent it has subject matter jurisdiction, and otherwise in the

13  superior courts in Orange County, California.  Defendants Mutual Credit Corporation and Spurling

14  also have headquarters in Orange County, and defendants Jacobson and Brown work in Orange

15  County.

16  **GENERAL ALLEGATIONS**

17       14.  The following allegations are made upon information and belief.  Due to the

18  deceptive nature of the program, plaintiffs reserve the right to modify or supplement these

19  allegations.

20  **MCC's PREDATORY PREMIUM FINANCING SCHEME**

21       15.  MCC provides nonrecourse loans to fund the purchase of life insurance policies.

22  The security for the loans is the policies themselves.  MCC specifically structures and operates its

23  premium financing program to create economic disincentives for borrowers to repay the loans.

24  MCC's intent from the program's inception was to cause the accrual of exorbitant interest, leaving

25  the borrower with no option but to relinquish the policy to MCC to discharge the enormous debt.

26  MCC expects to reap enormous profits through the scheme.

27       16.  MCC's financing program is directed towards seniors and their families.  MCC

28  initially lends money for the purchase of a life insurance policy to an irrevocable life insurance trust

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-5-
COMPLAINT

1    created by the senior insured or the senior insured's relatives. The loan amount is comprised of

2    funds equal to the policy premiums for the first two years, an origination fee of five percent of the

3    total loan, and a "premium reserve account" equal to one to three percent of the face amount of the

4    applicable life insurance policy. The so-called "premium reserve account" can be managed by the

5    trust or distributed to trust beneficiaries. The loan is secured by the policy itself, and a collateral

6    assignment in favor of Mutual Credit Corporation is executed and filed with the insurance company

7    as evidence of that security interest.

8         17.    MCC charges very high rates of interest for its financing, including a five percent

9    origination fee, which is added to the principal, a ten percent fixed interest per annum on the

10   principal loan amount and contingent interest as high as ten percent of the face value of the life

11   insurance policy. The contingent interest amount is calculated based on the life insurance policy's

12   "fair market value" as that term is defined in the promissory note. Thus, if the principal loan

13   amount was $800,000 and the policy purchased had a face value of $10,000,000, the contingent

14   interest alone could be as high as $1,000,000 (i.e., ten percent of the face value), or more than the

15   total principal loan. The nonrecourse promissory notes are due and payable in two years. In other

16   words, MCC devised a financing program in which the potential "interest" charged on a two-year

17   loan could be greater than 100 percent of the principal loan amount.

18        18.    After the two-year maturity date, the trust's indebtedness, including any fixed

19   interest and contingent interest, then bears an additional default interest of 15 percent per annum.

20   The borrower-trust has the option of repaying the promissory note with fixed interest and contingent

21   interest prior to the note's maturity date, at which time the collateral assignment of the life insurance

22   policy should be released and the note should be returned to the trust marked as paid. If the

23   insurance trust is unable or unwilling to repay MCC's loan with interest, the trust can elect to

24   relinquish the policy to MCC in complete satisfaction of the debt. A high contingent interest makes

25   it prohibitively expensive to repay MCC's loan and maintain ownership of the policy.

26        19.    The MCC loan documents provide that the contingent interest could be zero if the

27   "fair market" value of the life insurance policy is equal to or less than the principal loan amount

28   plus the fixed ten percent interest. The promissory note sets forth a specific procedure for

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-6-
COMPLAINT

1    determining the "fair market value" of the policies.  The valuation procedure involves the use of

2    "life settlement" providers.  "Life settlements" are a financial option for life insurance policyowners

3    who are unable to maintain or no longer want to own a life policy.  Rather than surrender the policy

4    to the life insurance carrier for the policy's cash surrender value (if any), policyowners are

5    sometimes eligible to sell their policy to third-party life settlement providers which might offer to

6    purchase policies for amounts that materially exceed the cash surrender value.  In the life

7    settlement industry, a "life settlement provider" is an entity that purchases policies from

8    policyowners.

9         20.   MCC's contracts instruct a trust to obtain at least two purchase bids from licensed

10    life settlement providers.  In the event the trust and MCC do not agree that the higher of the

11    purchase bids provides a true indication of value, the loan documents require the trust to obtain an

12    "independent third-party valuation" from a specified independent company that is in the business of

13    life settlements and related businesses (referred to herein as the "Independent Valuator") to

14    establish the value for the policy.  The Independent Valuator also is a licensed life settlement

15    provider.  The Independent Valuator's valuation sets the "fair market value" of the policies for

16    determining the contingent interest amount.

17         21.   MCC, however, will only accept valuations that would result in the greatest

18    contingent interest amount.  Even when a trust follows the procedure MCC dictates in its own

19    contracts of adhesion, MCC has refused to accept valuations from the Independent Valuator that

20    would result in a contingent interest less than the full ten percent of face value.  Instead, MCC

21    attempts to manipulate the valuation process.  MCC's intent is to ensure that contingent interest

22    component is so substantial that a borrower-trust does not have the ability or the economic incentive

23    to repay the loan and instead relinquishes the policy to MCC to satisfy the debt.  Once MCC obtains

24    complete ownership of the policy, it can continue to pay premiums on the policy and collect the

25    death benefits when the insured dies, or it can sell the policy on the secondary market through a life

26    settlement.

27         22.   MCC's entire program was designed and intended to be operated from its inception,

28    and is being operated in an increasingly egregious fashion, in a premeditated attempt to defraud

BARGER & WOLEN LLP
659 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-7-
COMPLAINT

1    elder policyholders of their insurance policies. After wresting ownership of these assets from the

2    trusts, MCC expects to sell the policies on the secondary market at considerable profits. Plaintiff is

3    informed and believes that MCC has financed the purchase of approximately $3.5 billion in

4    insurance coverage through its premium financing and that the program could result in hundreds of

5    millions of dollars in monetary losses to seniors.

6                        **MCC OFFERS PREMIUM FINANCING TO MR. JENKINS**

7            23.    MCC presented its premium financing program to Harry Jenkins in late 2004.

8    Mr. Jenkins was 78 at the time. On December 23, 2004, he created an irrevocable insurance trust

9    entitled the "Harry L. Jenkins Irrevocable Insurance Trust" for the benefit of his spouse and

10   children. His daughter, Toni Y. Jones, was nominated as the investment trustee for the Trust. As

11   investment trustee, Ms. Jones has authority to make all investment and discretionary decisions with

12   respect to the Trust.

13           24.    The trust instrument also provides for an administrative trustee. The administrative

14   trustee maintains the books and records of the trust, prepares and files tax returns, and performs

15   other administrative tasks. The administrative trustee is the Trust's fiduciary. As a fiduciary, the

16   trustee is obligated to act in the utmost good faith vis-à-vis the Trust. On December 23, 2004,

17   Ms. Jones signed an engagement letter appointing David F. Doten, a California professional

18   fiduciary, as the original administrative trustee. This appointment lasted for two years. Mr. Doten

19   was introduced to the transaction by MCC, and acted in this capacity for many if not all of the MCC

20   cases.

21           25.    As administrative trustee, Mr. Doten submitted an application to MCC for premium

22   financing on January 13, 2005. On February 4, 2005, Mr. Jenkins and his wife signed a Consent

23   and Acknowledgement Agreement in which they unconditionally and irrevocably consented to the

24   application for and purchase by the Trust of an insurance policy on Mr. Jenkins's life through a

25   nonrecourse loan obtained from MCC. The applicable life policy was issued by Pacific Life

26   Insurance Company with a death benefit of $10,000,000 (the "Policy"). Defendant Brown acted as

27   a life insurance agent for Pacific Life with respect to the purchase of the Policy. On information

28   and belief, he received a commission on this transaction and shared that commission with defendant

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-8-
COMPLAINT

1    Jacobson.  At the same time, Brown and Jacobson represented MCC in the financing of the loan to

2    purchase the Policy.  Pursuant to California Insurance Code section 785, Brown and Jacobson, as

3    life insurance agents regulated under California law, owed Mr. Jenkins a duty of honesty, good

4    faith, and fair dealing.  This duty is in addition to any other duty, whether express or implied, that

5    may exist by law.

6          26.    On February 11, 2005, David F. Doten, in his capacity as administrative trustee for

7    the Trust, executed an Agreement Relating to Nonrecourse Financing, a Secured Nonrecourse

8    Promissory Note (the "Note"), and an Assignment of Life Insurance Policy (the "Assignment") in

9    favor of Mutual Credit Corporation.  Unbeknownst to the Trust, Mutual Credit Corporation

10   simultaneously assigned all rights in the Policy and loan to Spurling, which had funded the

11   transaction.  The assignment from Mutual Credit Corporation to Spurling occurred

12   contemporaneously with the closing of the loan with the Trust.  Mutual Credit Corporation

13   nevertheless continued to service the loan.

14         27.    On August 31, 2005, Mutual Credit Corporation recorded a document with

15   Pacific Life releasing Mutual Credit Corporation's collateral assignment of the Policy.  Spurling

16   recorded a collateral assignment of the Policy with Pacific Life on that same day.  On information

17   and belief, David Doten executed the collateral assignment in favor of Spurling.  Although the

18   assignment to Spurling occurred at the time the loan was made, the new collateral assignment in

19   favor of Spurling was not filed with Pacific Life until several months later, thereby obscuring

20   Spurling's involvement in the transaction from its inception.

21         28.    The initial loan amount was $737,905.  This amount included $500,000 in

22   premiums for the first two years, a five percent origination fee of $36,895, and a $201,010 payment

23   to the Trust to establish the "premium reserve account".

24         29.    The Note had a maturity date of February 10, 2007.  Pursuant to the loan

25   documents, the Trust had the option of repaying the loan with interest prior to the Note's maturity

26   date.  The Note provides for ten percent interest per annum on the principal amount, plus any

27   applicable contingent interest.  The Note describes the mechanism for determining the amount of

28   contingent interest owing (if any) as follows:

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-9-
COMPLAINT

1    As used herein, the term "Contingent Interest" means an amount equal to the lesser

2    of (x) $1,000,000 and (y) the amount, if any, by which the fair market value of the

3    Policy (defined below) as of the Maturity Date exceeds the outstanding principal and

4    accrued interest (other than the Contingent Interest) under this Note.  For the

5    purposes of calculating the Contingent Interest, the Trust shall obtain at least two

6    purchase "bids" from licensed life settlement providers or, in the event the Trust and

7    Lender do not agree that the higher of such "bids" provides a true indication of

8    value, the Trust shall obtain an independent third-party valuation from [the

9    Independent Valuator] to establish the value for this purpose.  If [the Independent

10   Valuator] does not provide this service, the Trust and Lender will find another

11   mutually agreeable independent third-party appraiser.

12        30.   The investment trustee determined that she wanted to maintain ownership of the

13   Policy and continue the life insurance for the benefit of the Jenkins family by refinancing the MCC

14   loan through XE-R.  In order to value the contingent interest for the purposes of making repayment,

15   the Trust followed the procedures set forth in the Note.  The Trust obtained bids on the Policy from

16   two licensed settlement providers:  Financial Life Services offered $700,000, and Secondary Life

17   Capital offered $609,000.  The Trust also obtained an independent third-party valuation of the

18   Policy from the Independent Valuator indicating a value of $850,000 for the Policy.  Pursuant to the

19   procedures provided in the Note, the Policy thus has a "fair market value" of less than the principal

20   loan amount plus ten percent fixed interest per annum.  Because the "fair market value" is less than

21   the principal plus fixed interest, the contingent interest owing under the Note is zero.

22        31.   On February 8, 2007, two days prior to the Note's maturity date, the Trust exercised

23   its right to repay the full amount due under the Note.  The Trust tendered to MCC a check for

24   $891,032, which represented the principal plus interest at ten percent per annum and a

25   contingent interest of zero.  XE-R provided the funds for the payment.  In consideration of its

26   provision of valuation and other services, the Trust agreed to appoint Mark Ross & Co., Inc. as the

27   broker of record in the event that the Trust later decided to sell the Policy on the secondary market

28   through a life settlement.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-10-
COMPLAINT

32. Pursuant to the MCC loan documents, MCC was obligated to release the collateral assignment of the Policy, to return the Note marked as paid in full, and return any other documents as required by the Note and other loan documents. MCC refused to release the collateral assignment and return the Note, and instead returned the check.

33. After learning that the Trust intended to refinance its loan through XE-R, on February 8, 2007, MCC wrote a letter to the Independent Valuator regarding the valuation of insurance policies in the MCC program. MCC did not notify the Trust that it was sending this letter to the Independent Valuator. A copy of this letter is attached to this complaint as Exhibit A and is incorporated by reference. MCC's letter makes false representations regarding the procedures for determining the Policy's "fair market value" within the meaning of the applicable promissory notes:

> We have requested in the past that you provide … valuation services. The services
> would include determining the "fair market value" for the policies, meaning "the
> highest price on the date of valuation that would be agreed to by a seller, being
> willing to sell but under no particular or urgent necessity for so doing, nor obligated
> to sell, and a buyer, being ready, willing, and able to buy but under no particular
> necessity for so doing, each dealing with the other with full knowledge of all the uses
> and purposes for which the property is reasonably adaptable and available." [citation
> omitted] Please note, that [the Independent Valuator] would not be requested to
> make a "bid" of what it would be willing to pay, but would be requested to state
> what the highest price in the marketplace would be.

34. The Loan Documents do not contain any terms suggesting that the valuation should be determined through the "highest price" procedure that MCC described. MCC derived this language after the fact from California's eminent domain statute, which is not germane to the interpretation of a promissory note related to an insurance contract. The only valuation procedure in the loan documents is that outlined above in paragraph 29. Nonetheless, MCC threatened to sue the Independent Valuator if it would not agree to follow MCC's false guidelines. MCC's previous communications with the Independent Valuator about the valuation process, its February 8, 2007 letter, and its threat to sue the Independent Valuator were designed unfairly to rig the valuation in

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-11-
COMPLAINT

1  favor of MCC in contravention to the procedures provided in the Note. This action by MCC was an

2  attempt to usurp the role of the trustee to obtain the bids that establish the fair market value, as well

3  as an improper attempt to influence the Independent Valuator first, through the implied promise of

4  large volumes of business, and then, through intimidation in its threats of legal action. The

5  Independent Valuator did not accede to MCC's threats or repeated attempts to manipulate the

6  valuation process.

7         35.  MCC wrote a letter to the Trust on February 22, 2007. A copy of the letter is

8  attached to this complaint as Exhibit B and incorporated by reference. MCC indicated that it

9  refused to accept the Trust's February 8, 2007 payment, in part, on the ground that the principal

10  amount increased by $65,500 due to the "payment of additional premiums as allowed in the

11  Collateral Pledge Agreement."  MCC first sent notice of this alleged premium payment on

12  February 8, 2007, two days before the maturity date. This notice was not received by the

13  investment trustee until after the Trust had already tendered the total amount due under the Note.

14         36.  MCC asserted that the $65,500 premium payment was due and owing in order to

15  prevent the policy from going into a grace period prior to the loan maturity date. This contention

16  was false; the premium payment was not due and owing and there was no need to make the

17  payment to prevent the Policy from entering a grace period prior to the loan maturity date. On

18  information and belief, MCC knew that the premium payment was not due and owing before the

19  maturity date and made the additional premium payment in order to increase the amount due and

20  manufacture an alleged default on behalf of the Trust. Further, even if the payment had been due,

21  MCC never gave the Trust the opportunity to utilize the "premium reserve account" which had been

22  established precisely for this purpose.

23         37.  MCC also indicated in its February 22 letter that it would not accept the

24  Independent Valuator's independent valuation that the Policy had a value of approximately

25  $850,000.  Despite the fact that the Independent Valuator's valuation resulted in a contingent

26  interest of zero, MCC asserted that the total amount due under the Note was $1,956,514, which

27  included $737,905 for the original principal loan amount, $65,500 for the additional alleged

28  premium payment, $153,109 in accrued fixed interest, and contingent interest of $1,000,000. In

BARGER & WOLEN LLP
660 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-12-
COMPLAINT

1    other words, the sum MCC demanded included a combined fixed and contingent interest of over

2    150 percent of the original loan amount on a two-year loan.  The February 22 letter also improperly

3    threatened to disqualify the Independent Valuator.

4            38.  The Trust responded by letter dated February 28, 2007.  Without acknowledging

5    that the additional $65,500 premium payment was properly added to the amount due, the Trust

6    agreed to include that additional amount in the funds paid in satisfaction of the loan.  The Trust

7    indicated that it had no obligation to include any contingent interest.  The Trust obtained a separate

8    loan from XE-R to repay the MCC loan.  By wire transfer that same day, XE-R, on behalf of the

9    Trust, re-tendered a payment to MCC in the amount of $956,532, which comprised the $891,032 the

10   Trust previously tendered plus the additional $65,500 amount.  This payment was made in full

11   satisfaction of the Trust's obligations under the Note.  MCC accepted this wire transfer and has not

12   returned the funds to the Trust.  MCC nevertheless has not released the collateral assignment of the

13   Policy nor returned the Note marked as paid in full, as required by the loan documents.

14           39.  MCC had no intention of accepting a contingent interest of zero, even if no

15   contingent interest was owed under the Note.  MCC designed a predatory premium financing

16   scheme that includes exorbitant rates of interest.  These high interest rates are specifically designed

17   to prevent borrower-trusts from attempting to repay the loans before the maturity date and maintain

18   ownership of the policies.   When the Jenkins Trust tendered the full payment of loan pursuant to

19   the valuation procedures in MCC's own contracts, MCC wrongfully refused to accept the payment

20   and attempted to interfere with and rig the valuation process so that it could claim an artificially

21   high contingent interest.  MCC's intention was to make it impossible for the Trust to maintain

22   ownership of the Policy.  The Trust has fully performed its obligations under the loan documents

23   and is entitled to a release of the collateral assignment of the Policy and a return of the Note marked

24   paid in full.

## FIRST CAUSE OF ACTION

**(Breach of Contract – By the Trust against Mutual Credit Corporation and Spurling Only)**

27           40.  The Trust realleges and incorporates herein by reference each and every allegation

28   contained in paragraphs 1 through 39, above, with the same force and effect as though set forth

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-13-
COMPLAINT

1  herein in full.

2      41.   The Trust and Mutual Credit Corporation entered into a written Agreement Relating

3  to Nonrecourse Financing, Secured Nonrecourse Promissory Note, and Assignment of Life

4  Insurance Policy.  These written agreements shall be referred to collectively as the "contract."  As

5  Mutual Credit Corporation's assignee, Spurling is bound by the contract as well.

6      42.   The Trust has at all times performed the terms of the contract in the manner

7  specified by the loan documents.

8      43.   MCC failed and refused, and continues to refuse, to tender its performance as

9  required by the contract.  This includes MCC's refusal to release the collateral assignment of the

10  Policy and to return the Note marked as paid upon the Trust's tender of funds on February 8, 2007,

11  and on March 1, 2007.

12      44.   MCC's failure and refusal to perform its obligations under the contract has directly

13  damaged the Trust by preventing it from taking ownership of the Policy free of MCC's collateral

14  assignment.  This prevents the Trust from maintaining the insurance policy for the benefit of the

15  Jenkins family, free from MCC's security interest or selling the Policy on the secondary market, if it

16  so chooses.  As a direct and proximate result of MCC's breaches of the contract, the Trust has

17  sustained damages in an amount to be proven at the trial, but in no event less than the jurisdictional

18  minimum of this court.

19      Wherefore, the Trust prays judgment against Mutual Credit Corporation and Spurling, and

20  each of them, as hereinafter set forth.

21                    **SECOND CAUSE OF ACTION**

22              **(Breach of the Implied Covenant – By the Trust against**

23                  **Mutual Credit Corporation and Spurling Only)**

24      45.   The Trust realleges and incorporates herein by reference each and every allegation

25  contained in paragraphs 1 through 44, above, with the same force and effect as though set forth

26  herein in full.

27      46.   In every contract there is an implied covenant of good faith and fair dealing by each

28  party not to do anything that will deprive the other parties of the benefits of the contract.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-14-
COMPLAINT

47.    MCC breached duties to act in good faith by, among other things, making an additional premium payment that was not due and owing in order to unfairly increase the amount due and thereby manufacture an alleged default on behalf of the Trust.  MCC also breached the implied covenant by interfering with the valuation process of the Policy and refusing to accept the Independent Valuator's independent valuation.

48.    As a direct and proximate result of MCC's breaches of the implied covenant of good faith and fair dealing and statutory obligations to act in good faith, the Trust has sustained damages in an amount to be proven at the trial, but in no event less than the jurisdictional minimum of this court.

Wherefore, the Trust prays judgment against Mutual Credit Corporation and Spurling, and each of them, as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Intentional Interference with Contract – By the Trust against All Defendants)

49.    The Trust realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 48, above, with the same force and effect as though set forth herein in full.

50.    Defendants, and each of them, knew that there was an existing contract and business relationship between XE-R, Mark Ross & Co., Inc. and the Trust, through which XE-R would help the Trust repay the MCC loan and obtain a release of MCC's collateral assignment.  The Trust, through XE-R's financing, would be able to maintain ownership of the Policy.  In the event that the Trust later decided to sell the policy, the Trust could negotiate a life settlement on the secondary market using Mark Ross & Co., Inc. as the broker.

51.    Defendants intentionally interfered with these contract and business relationships by committing the wrongful acts alleged herein.  Defendants intended to prevent the Trust from obtaining ownership of the Policy free of any liens or other security by MCC or from selling the Policy to a third party through a life settlement.  As a direct result of defendants' actions and omissions, the Trust has been damaged in an amount according to proof, but in no event less than the jurisdictional minimum of this court.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-15-
COMPLAINT

1    52.  Defendants' actions were undertaken with fraud, malice or oppression, or with a

2    conscious disregard of the rights of the Trust, and, therefore, the Trust is entitled to an award of

3    exemplary and punitive damages against defendants, and each of them, in an amount according to

4    proof.

5        Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter

6    set forth.

7                            **FOURTH CAUSE OF ACTION**

8              **(Intentional Interference with Prospective Economic Advantage –**

9                        **By the Trust against All Defendants)**

10   53.  The Trust realleges and incorporates herein by reference each and every allegation

11   contained in paragraphs 1 through 52, above, with the same force and effect as though set forth

12   herein in full.

13   54.  Defendants, and each of them, knew that the Trust intended to repay the MCC loan

14   and obtain a release of MCC's collateral assignment through financing from XE-R. The Trust then

15   would be able to maintain ownership of the Policy for the benefit of the Jenkins family. In the

16   event that the Trust later decided to sell the Policy, the Trust could negotiate a life settlement on the

17   secondary market using Mark Ross & Co., Inc. as the broker.

18   55.  Defendants willfully and deliberately interfered with the Trust's prospective

19   economic advantage by committing the wrongful acts alleged herein. Defendants intended to

20   prevent the Trust from obtaining ownership of the Policy free of any liens or other security by MCC

21   or from selling the Policy through a life settlement. As a direct result of defendants' actions and

22   omissions, the Trust has been damaged in an amount according to proof, but in no event less than

23   the jurisdictional minimum of this court.

24   56.  Defendants' actions were undertaken with fraud, malice or oppression, or with a

25   conscious disregard of the rights of the Trust, and, therefore, the Trust is entitled to an award of

26   exemplary and punitive damages against defendants, and each of them, in an amount according to

27   proof.

28       Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-16-
COMPLAINT

1  set forth.

2  **FIFTH CAUSE OF ACTION**

3  **(Fraudulent Misrepresentation – By the Trust against All Defendants)**

4      57.  Plaintiff realleges and incorporates herein by reference each and every allegation

5  contained in paragraphs 1 through 56, above, with the same force and effect as though set forth

6  herein in full.

7      58.  Defendants made the following representations and promises to the Trust:

8          (a)  That the Trust could repay the nonrecourse loan with interest before the

9  Note's maturity date and that, upon this payment, MCC would release all

10  collateral assignment in the Policy and return the Note marked as paid.

11          (b)  That MCC would accept a contingent interest of zero if the "fair market

12  value" of the Policy as defined in the Note was equal to or less than the

13  principal loan amount plus fixed interest.

14      59.  These representations were false when made.  Defendants knew that the MCC

15  premium financing program was structured and intended to be operated from the beginning, and is

16  being operated, so that the Trust would have no economic incentive or ability to repay the loan and

17  exorbitant interest and thereby maintain ownership of the policies.

18      60.  Defendants also knew that MCC, or its assignees, had no intention of ever

19  accepting a contingent interest of zero and complying with its obligation to release the collateral

20  assignment, even if a borrower-trust followed the valuation procedures in the loan documents and

21  the Policy's "fair market value" resulted in a contingent interest of zero.

22      61.  Defendants intended the Trust to rely upon the representations, and the Trust did in

23  fact rely on these representations.

24      62.  The Trust's reliance was justifiable.

25      63.  Mutual Credit Corporation is a licensed premium finance company.  In addition to

26  breaching general duties to avoid making fraudulent misrepresentations, defendants' actions and

27  omissions violated statutory duties under California Financial Code section 18500.  That section

28  provides that "[n]o person shall advertise, print, display, publish, distribute, or broadcast, or cause

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-17-
COMPLAINT

1   or permit to be advertised, printed, displayed, published, distributed, or broadcast, in any manner in

2   connection with the business of an [premium finance company] any statement or representation

3   with regard to the rates, terms, or conditions for making or negotiating loans, or with regard to

4   investment certificates, which is false, misleading, or deceptive." Defendants' deceptive and

5   misleading acts or omissions in connection with Mutual Credit Corporation violated section 18500.

6         64.   As a direct result of defendants' actions and omissions, the Trust has been damaged

7   in an amount according to proof, but in no event less than the jurisdictional minimum of this court.

8   The Trust's reliance on defendants' misrepresentations was a substantial factor in causing its

9   damage.

10        65.   Defendants' actions were undertaken with fraud, malice or oppression, or with a

11   conscious disregard of the rights of the Trust, and, therefore, plaintiff is entitled to an award of

12   exemplary and punitive damages against defendants, and each of them, in an amount according to

13   proof.

14        Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter

15   set forth.

16                 **SIXTH CAUSE OF ACTION**

17       **(Fraudulent Concealment – By the Trust against All Defendants)**

18        66.   The Trust realleges and incorporates herein by reference each and every allegation

19   contained in paragraphs 1 through 65, above, with the same force and effect as though set forth

20   herein in full.

21        67.   Defendants disclosed some facts to the Trust, but intentionally failed to disclose

22   other important facts, making the disclosures deceptive.  In the alternative, defendants intentionally

23   failed to disclose a fact or facts that were known to defendants and that the Trust could not have

24   discovered.

25        68.   The Trust did not know of the concealed facts.

26        69.   Defendants intended to deceive the Trust by concealing facts.

27        70.   Plaintiff justifiably relied on defendants' deception.

28        71.   As a direct result of defendants' deception, the Trust has been damaged in an

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-18-
COMPLAINT

1  amount according to proof, but in no event less than the jurisdictional minimum of this court.  The

2  Trust's reliance on defendants' deception was a substantial factor in causing its damage.

3          72.  Defendants' actions were undertaken with fraud, malice or oppression, or with a

4  conscious disregard of the rights of the Trust, and, therefore, the Trust is entitled to an award of

5  exemplary and punitive damages against defendants, and each of them, in an amount according to

6  proof.

7          Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter

8  set forth.

9                              **SEVENTH CAUSE OF ACTION**

10          **(Negligent Misrepresentation – By the Trust against All Defendants)**

11          73.  The Trust realleges and incorporates herein by reference, each and every allegation

12  contained in paragraphs 1 through 72, above, with the same force and effect as though set forth

13  herein in full.

14          74.  In making representations as herein alleged, defendants had no reasonable basis to

15  believe that they were true.

16          75.  These representations were false.

17          76.  Defendants intended the Trust to rely upon the representations, and plaintiff did in

18  fact rely on these representations.

19          77.  The Trust's reliance was justifiable.

20          78.  As a direct result of defendants' actions and omissions, the Trust has been damaged

21  in an amount according to proof, but in no event less than the jurisdictional minimum of this court.

22  The Trust's reliance on defendants' misrepresentations was a substantial factor in causing its

23  damage.

24          Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter set

25  forth.

26                              **EIGHTH CAUSE OF ACTION**

27          **(Bus. & Prof. § 17200 et seq. – By the Trust against All Defendants)**

28          79.  The Trust realleges and incorporates herein by reference, each and every allegation

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-19-
COMPLAINT

1  contained in paragraphs 1 through 78, above, with the same force and effect as though set forth

2  herein in full.

3      80.   Defendants have engaged in an unlawful, unfair or fraudulent business acts or

4  practices and unfair, deceptive untrue or misleading advertising within the meaning of Business and

5  Professions Code section 17200 et. seq.

6      81.   The Trust has suffered an injury in fact and has lost money or property as result of

7  defendants' business acts, omissions, misrepresentation and practices alleged herein.

8      82.   Accordingly, the Trust is entitled to equitable relief, including injunctive relief.

9  Wherefore, the Trust prays judgment against defendants, and each of them, as hereinafter set

10 forth.

## NINTH CAUSE OF ACTION

### (Intentional Interference with Contract – By XE-R against All Defendants)

13     83.   XE-R realleges and incorporates herein by reference each and every allegation

14 contained in paragraphs 1 through 82, above, with the same force and effect as though set forth

15 herein in full.

16     84.   Defendants, and each of them, knew that there was an existing contract and business

17 relationship between XE-R and the Trust, through which and XE-R loaned money to the Trust to

18 repay the MCC loan.  Defendants further knew that the Trust would repay the XE-R loan with

19 interest.

20     85.   Defendants intentionally interfered with this contract and business relationship by

21 committing the wrongful acts alleged herein.  As a direct result of defendants' actions and

22 omissions, XE-R has been damaged in an amount according to proof, but in no event less than the

23 jurisdictional minimum of this court.

24     86.   Defendants' actions were undertaken with fraud, malice or oppression, or with a

25 conscious disregard of the rights of XE-R, and, therefore, XE-R is entitled to an award of exemplary

26 and punitive damages against defendants, and each of them, in an amount according to proof.

27 Wherefore, XE-R prays judgment against defendants, and each of them, as hereinafter set

28 forth.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-20-
COMPLAINT

## TENTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage –**

**By XE-R against All Defendants)**

87.    XE-R realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 86, above, with the same force and effect as though set forth herein in full.

88.    Defendants, and each of them, knew that XE-R had loaned funds to the Trust to repay the MCC loan.  Defendants further knew that the Trust would repay the XE-R loan with interest.

89.    Defendants willfully and deliberately interfered with this prospective economic advantage by committing the wrongful acts alleged herein.  As a direct result of defendants' actions and omissions, XE-R has been damaged in an amount according to proof, but in no event less than the jurisdictional minimum of this court.

90.    Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of XE-R, and, therefore, XE-R is entitled to an award of exemplary and punitive damages against defendants, and each of them, in an amount according to proof.

Wherefore, XE-R prays judgment against defendants, and each of them, as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION

**(Bus. & Prof. § 17200 et seq. – By XE-R against All Defendants)**

91.    XE-R realleges and incorporates herein by reference, each and every allegation contained in paragraphs 1 through 90, above, with the same force and effect as though set forth herein in full.

92.    Defendants have engaged in an unlawful, unfair or fraudulent business acts or practices and unfair, deceptive untrue or misleading advertising within the meaning of Business and Professions Code section 17200 et. seq.

93.    XE-R has suffered an injury in fact and has lost money or property as result of defendants' business acts, omissions, misrepresentation and practices alleged herein.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

-21-
COMPLAINT

1    94.   Accordingly, XE-R is entitled to equitable relief, including injunctive relief.

2    Wherefore, XE-R prays judgment against defendants, and each of them, as hereinafter set

3    forth.

## TWELFTH CAUSE OF ACTION

### (Restitution – By XE-R against All Defendants)

6    95.   XE-R realleges and incorporates herein by reference, each and every allegation

7    contained in paragraphs 1 through 94, above, with the same force and effect as though set forth

8    herein in full.

9    96.   XE-R is entitled to recover the $956,532 it paid to defendants on March 1, 2007,

10   plus interest.  Defendants would be unjustly enriched if they retained those funds.

11   Wherefore, XE-R prays for judgment against defendants, and each of them, as hereinafter

12   set forth.

## THIRTEENTH CAUSE OF ACTION

### (Intentional Interference with Prospective Economic Advantage –

### By Mark Ross & Co., Inc. against All Defendants)

16   97.   Mark Ross & Co., Inc. realleges and incorporates herein by reference each and

17   every allegation contained in paragraphs 1 through 96, above, with the same force and effect as

18   though set forth herein in full.

19   98.   Defendants, and each of them, knew that XE-R had loaned funds to the Trust to

20   repay the MCC loan.  Defendants further knew that in exchange for the provision of valuation and

21   other services, the Trust agreed to appoint Mark Ross & Co., Inc. as the broker of record in the

22   event that the Trust later decided to sell the Policy on the secondary market through a life

23   settlement.  Mark Ross & Co., Inc. would receive a commission on this transaction.

24   99.   Defendants willfully and deliberately interfered with this prospective economic

25   advantage by committing the wrongful acts alleged herein.  As a direct result of defendants' actions

26   and omissions, Mark Ross & Co., Inc. has been damaged in an amount according to proof, but in no

27   event less than the jurisdictional minimum of this court.

28   100. Defendants' actions were undertaken with fraud, malice or oppression, or with a

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-22-
COMPLAINT

1  conscious disregard of the rights of Mark Ross & Co., Inc., and, therefore, Mark Ross & Co., Inc. is

2  entitled to an award of exemplary and punitive damages against defendants, and each of them, in an

3  amount according to proof.

4      Wherefore, Mark Ross & Co., Inc. prays judgment against defendants, and each of them, as

5  hereinafter set forth.

## FOURTEENTH CAUSE OF ACTION

7  **(Bus. & Prof. § 17200 et seq. – By Mark Ross & Co., Inc. against All Defendants)**

8      101.  Mark Ross & Co., Inc. realleges and incorporates herein by reference, each and

9  every allegation contained in paragraphs 1 through 100, above, with the same force and effect as

10  though set forth herein in full.

11      102.  Defendants have engaged in an unlawful, unfair or fraudulent business acts or

12  practices and unfair, deceptive untrue or misleading advertising within the meaning of Business and

13  Professions Code section 17200 et. seq.

14      103.  Mark Ross & Co., Inc. has suffered an injury in fact and has lost money or property

15  as result of defendants' business acts, omissions, misrepresentation and practices alleged herein.

16      104.  Accordingly, Mark Ross & Co., Inc. is entitled to equitable relief, including

17  injunctive relief.

18      Wherefore, Mark Ross & Co., Inc. prays judgment against defendants, and each of them, as

19  hereinafter set forth.

## FIFTEENTH CAUSE OF ACTION

21  **(Declaratory Relief – By Plaintiffs against Mutual Credit Corporation and Spurling)**

22      105.  Plaintiffs reallege and incorporate herein by reference, each and every allegation

23  contained in paragraphs 1 through 104, above, with the same force and effect as though set forth

24  herein in full.

25      106.  Plaintiffs seek a judicial determination pursuant to section 1060 of the California

26  Code of Civil Procedure of the rights and duties of the respective parties with respect to an actual

27  controversy arising under the various contracts at issue.

28      107.  An actual controversy exists between plaintiffs and MCC as the Trust has performed

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-23-
COMPLAINT

1   all obligations and duties under the relevant contract yet defendants have failed and refused and

2   continue to fail and refuse to release the collateral assignment of the Policy and to return the Note

3   marked as paid in full.  On information and belief, MCC disputes that they are required to release

4   all security interests and return the Note.

5        108.  Plaintiffs contend and desire a judicial determination that MCC has no right, title or

6   interest in the Policy and that they must release all collateral assignments of the Policy and return

7   the Note to the Trust marked as paid in full.

8        Wherefore, plaintiffs, and each of them, pray judgment against Mutual Credit Corporation

9   and Spurling, and each of them, as hereinafter set forth.

10   WHEREFORE, plaintiffs pray for judgment as follows:

11   For the First and Second Causes of Action against MCC:

12   1.    For general damages according to proof;

13   2.    For special damages according to proof; and

14   3.    For prejudgment interest.

15   For the Third, Fourth, Fifth, and Sixth Causes of Action against all defendants:

16   1.    For general damages according to proof;

17   2.    For special damages according to proof;

18   3.    For prejudgment interest; and

19   4.    For punitive and exemplary damages in an unspecified sum.

20   For the Seventh Cause of Action against all defendants, jointly and severally:

21   1.    For general damages according to proof;

22   2.    For special damages according to proof; and

23   3.    For prejudgment interest.

24   For the Eighth Cause of Action against all defendants:

25   1.    For a court order enjoining defendants from engaging in any unlawful, unfair or

26        fraudulent business acts or practices and unfair, deceptive untrue or misleading

27        advertising within the meaning of Business and Professions Code section 17200

28        et seq.

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-24-
COMPLAINT

For the Ninth and Tenth Causes of Action against all defendants:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For prejudgment interest; and

4.    For punitive and exemplary damages in an unspecified sum.

For the Eleventh Cause of Action against all defendants:

1.    For a court order enjoining defendants from engaging in any unlawful, unfair or fraudulent business acts or practices and unfair, deceptive untrue or misleading advertising within the meaning of Business and Professions Code section 17200 et seq.

For the Twelfth Cause of Action against all defendants:

1.    For restitution of the $956,532 paid by XE-R;

2.    For prejudgment interest.

For the Thirteenth Causes of Action against all defendants:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For prejudgment interest;

4.    For punitive and exemplary damages in an unspecified sum.

Fourteenth Cause of Action against all defendants:

1.    For a court order enjoining defendants from engaging in any unlawful, unfair or fraudulent business acts or practices and unfair, deceptive untrue or misleading advertising within the meaning of Business and Professions Code section 17200 et seq.

Fifteenth Cause of Action for declaratory relief against MCC:

1.    That the court adjudicate and declare that the Trust has at all times performed the terms of the loan contract in the manner specified by the loan documents;

2.    That the court adjudicate and declare that MCC have breached their obligations under the loan contract;

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA  94108
(415) 434-2800

3.   That the court adjudicate and declare that MCC, and each of them, have no rights whatsoever with respect to the Policy and that they must release the collateral assignment of the Policy and return the Note marked as paid in full.

For All Causes of Action:

1.   For costs herein incurred;

2.   For attorney fees incurred in pursue of this matter;

3.   And for such other and further relief as the court may deem just and proper.

DATE: May 13, 2007                    BARGER & WOLEN LLP


By: _____
    David J. McMahon
    Randall A. Doctor
    Travis R. Wall
    Attorneys for plaintiffs
    TONI Y. JONES, in her capacity as
    Investment Trustee for the HARRY L.
    JENKINS IRREVOCABLE INSURANCE
    TRUST, MARK ROSS & CO., INC. and
    XE-R, LLC

BARGER & WOLEN LLP
650 CALIFORNIA STREET
NINTH FLOOR
SAN FRANCISCO, CA 94108
(415) 434-2800

-26-
COMPLAINT