UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARCHE MASTER FUND, L.P.

      Plaintiff,

 v.

XE-R, LLC,

      Defendant.

---

ECF CASE

Civil Action No. 07-CV-2993 (TPG)(AJP)

## REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND FOR A STAY PENDING ARBITRATION

Jack A. Gordon (JG 0536)
Abbey Green (AG 9293)
KENT, BEATTY & GORDON, LLP
425 Park Avenue, The Penthouse
New York, NY 10022
(212) 421-4300

*Attorneys for Defendant*
*XE-R, LLC*

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| 1. Arche Does Not and Cannot Demonstrate a Breach | 2 |
|     A. Section 10.1 of the NPA Has Not Been Breached | 3 |
|     B. The Alleged Breaches of the XE-R Agreement Must be Arbitrated | 5 |
| CONCLUSION | 10 |

Defendant XE-R, LLC ("XE-R") respectfully submits this Reply Memorandum in support of its motion for summary judgment against Plaintiff Arche Master Fund, L.P. ("Arche") pursuant to Fed. R. Civ. P. 56, and to stay whatever remains of this litigation, if anything, pending arbitration pursuant to 9 U.S.C. § 3.

## PRELIMINARY STATEMENT

Arche's argument in opposition relies exclusively on baseless attacks on the managing member of XE-R, including its counsel. Indeed, Arche's opposition boils down to an assertion that there *might* be a breach that it doesn't yet know about because counsel's representations might some day prove untrue. As "grounds" for its suspicion, Arche points to two other actions brought by its affiliates, the pending arbitration brought by XE Capital Management, LLC ("XE Capital"),[1] and the New York State action brought by XE L.I.F.E., LLC ("XE LIFE"),[2] in an attempt to use the allegations of its affiliates in those actions as factual evidence against XE-R and Mark Ross & Co., Inc. ("MR&Co.") here.

Arche does not and cannot show that XE-R or its management engaged in any conduct that was unfair or unreasonable under the provisions of the "Note Purchase Agreement" between Arche and XE-R, dated August 23, 2004 (the "NPA"), or that XE-R or its management has

---

[1] *XE Capital Management, LLC v. XE-R, LLC and R 2004, LLC, Mark Ross & Co. and Mark E. Ross*, (AAA No. 13 145 Y 02055 06) (the "XE-R Arbitration"). Arche raises XE Capital's allegations in the XE-R Arbitration as factual support for its breach of contract claim, both in its complaint (Compl., ¶ 42), and in its opposition memorandum (Pl.'s Mem., p. 9).

[2] *XE Capital Management, LLC and XE L.I.F.E., LLC v. XE-R, LLC, Mark Ross & Co., Inc. and Mark E. Ross*, Index No. 603579/2006 (N.Y. Sup. Ct.). Arche uses the Court's decision and order granting XE LIFE's motion for a preliminary injunction to support its contention that XE-R cannot be trusted (Pl.'s Mem., pp. 11-12), as though XE LIFE's arguments and allegations in that action are evidence. We note that since the date of the Court's decision and order granting XE LIFE's motion for a preliminary injunction, the Court denied XE LIFE's motion to dismiss XE-R's counterclaim for breach of contract, concluding that the brokerage commissions at issue in that case may ultimately be determined to be subject to the provisions of the XE-R joint venture agreement.

breached any provision of the "Second Amended and Restated Limited Liability Company Agreement" between XE Capital and R 2004, LLC ("R2004"), dated as of December 31, 2004 (the "XE-R Agreement"). More importantly, it has not rebutted the fact that ***no breach is even alleged*** in the Complaint. Arche's arguments are without merit, and, like its claims in this action, are nothing more than a frivolous attack on XE-R and its management.

As for Arche's claim of a possible breach of the very contract at issue in the XE-R Arbitration, that alleged possible breach must be arbitrated. Nevertheless, Arche resists submitting its breach of contract claim to arbitration. Instead, it seeks to use that agreement as both a sword and a shield here – on the one hand asserting rights flowing from that agreement, and on the other hand, claiming that as a non-signatory, it has no obligation to arbitrate those rights. Regardless of whether Arche wishes to participate in the XE-R Arbitration, the claim of breach of the XE-R Agreement must be arbitrated.

Consequently, (i) summary judgment should be granted in XE-R's favor and against Arche, and (ii) XE-R should be granted a stay pending arbitration of any dispute of a breach arising out of the XE-R Agreement, in accordance with the arbitration provision in that document.

## ARGUMENT

**1.    Arche Does Not and Cannot Demonstrate a Breach**

Arche premises its alleged default of the NPA on three separate breaches (§ 10.1 of the NPA, and §§ 3.6(a)(ii) and (iv) of the XE-R Agreement (Compl., ¶¶ 36, 38-40)), but fails to demonstrate any breach, and fails to raise an issue of fact material as to the outcome of its claim.

### A. Section 10.1 of the NPA Has Not Been Breached

Arche's sole contention here is that XE-R's involvement in the Jenkins transaction, through MR&Co., ***might have been*** upon terms less fair and reasonable than would be expected if a non-affiliated party, rather than MR&Co., had been involved. (Pl.'s Mem., p. 9.) However, since MR&Co. will be providing XE-R with 100% of any commissions it earns in connection with any settlement of the Jenkins Policy, the terms are as favorable as possible – in fact, far better than could be expected if XE-R had been dealing with a non-affiliate. (*See* Def.'s Mem., p. 5.) Moreover, the term sheet signed months before this litigation by XE-R and the Jenkins trust in connection with the Jenkins transaction indicates that XE-R is to receive the commissions in the event of a settlement of the Jenkins policy. (Affidavit of Mark E. Ross, dated July 3, 2007 ("Ross Aff."), ¶ 8 & Ex. A, p. 15.) Accordingly, as a matter of law, there is nothing unfair or unreasonable about the transaction.

Recognizing this fatal flaw, Arche opposes the motion by asserting that there are triable issues of fact because the letter from MR&Co.'s counsel regarding MR&Co.'s intentions (Ex. F to Def.'s Rule 56.1 Statement) is "insufficient evidence" and any statement of MR&Co.'s intentions cannot be trusted. (Pl.'s Mem., pp. 9-10.)[3]

---

[3] Arche's recitation of the allegations made by its affiliate, XE Capital, in the pending arbitration to try to submit "evidence" sufficient to create an issue of material fact here as to the trustworthiness of MR&Co. that it will provide the commissions as its counsel has represented is just plain silly. (Pl.'s Mem., p. 9.) *See, e.g., Thomas v. Keane*, 2001 U.S. Dist. LEXIS 4873, *6 (S.D.N.Y. April 23, 2001) (*quoting Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ("[t]he nonmoving party may not rely on conclusory allegations to create disputed factual issues[ ]" and "must do more than raise 'some metaphysical doubt as to the material facts.'").

Indeed, Arche's allegations boil down to an assertion that the representation made – first to Arche and then to the Court – ***might later*** prove untrue. (Pl.'s Mem., p. 9.) This is insufficient to create an issue of material fact in opposition to summary judgment. *Thomas v. Keane*, 2001 U.S. Dist. LEXIS 4873 at *6; *see also Fidelity and Guaranty Ins. Co. v. West Point Realty, Inc.*, 2002 U.S. Dist. LEXIS 15405, *4 (S.D.N.Y. August 21, 2002) (non-moving party must show more than "metaphysical doubt").

Lest there be any doubt about veracity of counsel's assurances, XE-R submits herewith the Reply Affidavit of Mark Ross in support of XE-R's motion. *Bonnie & Company Fashions, Inc. v. Bankers Trust Co.*, 945, F.Supp. 693 (S.D.N.Y. 1996) ("reply papers may properly address new material issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party")(*quoting Litton Indus. v. Lehman Bros. Kuhn Loeb, Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991)). The affidavit unequivocally represents the intent of Mark Ross, MR&Co. and R2004 to provide the commissions at issue to XE-R. (Ross Aff, ¶ 3.) Consequently, even if counsel's prior representation was insufficient (and we do not believe that is the case), there can now be no issue of material fact concerning payment of the commissions to XE-R.

Finally, Arche contends the terms of the Jenkins transaction ***might not be fair*** because MR&Co. obtained the brokerage rights and control of commissions, and that counsel's representation that MR&Co. will turn over the commissions to XE-R is merely a *post hoc* justification that does not render the transaction fair. (Pl.'s Mem., p. 10.) First, Arche fails to present any evidence of MR&Co.'s alleged intent to withhold any such commission from XE-R

at the time it entered into the Jenkins transaction. Indeed, the term sheet in connection with the Jenkins transaction, which indicates that XE-R is to receive the commissions in the event of a settlement, was signed by the Jenkins trust and XE-R on February 8, 2007, more than two months before Arche filed this lawsuit. (*See* Ross Aff., ¶ 8 & Ex. A, p. 15.) Consequently, it cannot demonstrate that the Jenkins transaction was, *at any time*, unfair to XE-R. Second, Arche fails to explain why the acquisition by MR&Co. of brokerage rights that inure to the exclusive benefit of XE-R could be unfair or less favorable than any arms-length transaction.

Moreover, pursuant to the XE-R Agreement, MR&Co. has the right to broker settlements of policies in the secondary market, and MR&Co.'s control of the brokerage comports with both the XE-R Agreement and the purposes and expectations of the joint venture. (XE-R Agreement, § 2.2.) Further, since MR&Co. has the employees, expertise and resources to broker settlements, it is reasonable and makes practical and professional sense to have MR&Co. control the brokerage of any settlement of the Jenkins policy. (*See* Ross Aff., ¶ 7.)

In sum, since any settlement brokerage by MR&Co. of the Jenkins policy inures to the exclusive benefit of XE-R, § 10.1 of the NPA was not – and could not be – breached as a result of XE-R's involvement in the Jenkins transaction.

**B.   The Alleged Breaches of the XE-R Agreement Must be Arbitrated**

Arche argues that XE-R waived its right to arbitration by participating in this litigation. (Pl.'s Mem., p. 12.) The Seventh Circuit case it cites, however, stands for the entirely unremarkable proposition that a party that chooses to bring an action in federal court cannot litigate, wait for a result, and, if disappointed, seek another forum. *See St. Mary's Medical Ctr.*

5

*Of Evansville, Inc. v. Disco Aluminum Products Co., Inc.*, 969 F.2d 585, 587 (7th Cir. 1992). Here, however, Arche chose this forum. Moreover, XE-R is not attempting to both litigate and arbitrate the arbitrable claims. XE-R is merely presenting the Court with an option either to adjudicate the summary judgment of the alleged breaches of the XE-R Agreement or to stay this litigation pending a determination in the XE-R Arbitration of those alleged breaches. If the Court determines a stay is appropriate, it need not reach the merits of the claim. On the other hand, if the Court determines that a stay is not appropriate, XE-R does not have to waste judicial resources by making a second summary judgment motion with respect to the alleged breaches of the XE-R Agreement, especially since such a motion would incorporate the same underlying incontrovertible facts.

Arche next argues that it cannot be compelled to arbitrate. (Pl.'s Mem., p. 13.) As a preliminary matter, XE-R seeks a **stay of litigation** of any default under the NPA predicated on a breach of the XE-R Agreement pending a determination in arbitration of a breach of the XE-R Agreement, as required by that document. A motion to stay under 9 U.S.C. § 3 is distinct from a motion to compel under 9 U.S.C. § 4. Indeed, a motion to stay encompasses "different equitable considerations" than a motion to compel. *Tepper Realty Co. V. Mosaic Tile Co.*, 259 F.Supp. 688, at 692 (S.D.N.Y. 1966). Under § 3, the moving party is not seeking specific performance or an order to proceed to arbitration, "but merely a stay of a kind long familiar in common law and in equity actions." *Id.* Consequently, where the court is "'satisfied that the issue involved ... is referable to arbitration,' the court must 'stay the trial of the action until such arbitration has been

had in accordance with the terms of the agreement'." *Id.* (*quoting* § 3 of the Federal Arbitration Act).

Here, the issue of a breach under the XE-R Agreement is clearly within the broad scope of that agreement's arbitration clause. In other words, it would be "manifestly inequitable" to allow Arche to have it both ways – that is, to claim reliance on XE-R's performance under the XE-R Agreement and at the same time to circumvent the arbitration clause of the XE-R Agreement. *Upstate Shredding, LLC v. Carloss Well Supply Co.*, 84 F.Supp.2d 357, at 363-64 (N.D.N.Y. 2000)(a party may not rely on an agreement containing an arbitration provision and also disclaim arbitrability of a cause of action it brings pursuant to that agreement). Thus, regardless of whether Arche arbitrates the issue of the alleged breaches of the XE-R Agreement, those alleged breaches must be arbitrated. In fact, if the alleged breaches are not arbitrated, then there will be two forums where alleged breaches are being decided simultaneously – in the XE-R Arbitration, where hearings are scheduled for early November, and in this Court. This exposes the parties to the risk of inconsistent results and wastes judicial resources. *See, e.g., Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F.Supp.2d 436, 439 (S.D.N.Y. 2001)(courts should "avoid duplication of judicial effort, avoid vexatious litigation in multiple forums, achieve comprehensive disposition of litigation among parties over related issues, and eliminate the risk of inconsistent adjudication")(*quoting Marshak v. Reed*, 13 Fed. Appx. 19 (2d Cir. 2001)).

As to whether Arche participates in the XE-R Arbitration, even under the traditional analysis for compelling a non-signatory to arbitrate a claim, Arche should be bound by the arbitration provision. Arche is not "merely an unsecured lender to XE-R" as it claims. (Pl.'s

7

Mem., p. 14.) First, the XE-R Agreement formed the joint venture itself and articulated its business purposes which, in turn, has created an opportunity for Arche to lend pursuant to the NPA. Second, as mentioned previously, a non-signatory that derives a benefit from an agreement, and claims a breach of that agreement, cannot circumvent the provision to arbitrate, even if suing on a different agreement that does not incorporate an arbitration provision. *See, e.g., HD Brous Co., Inc. V. Mrzyglocki.* 2004 U.S. Dist. LEXIS 3095, *24 (S.D.N.Y. 2004) ("[h]aving relied upon the Agreement for substantive benefit in this litigation, Petitioner is estopped from disclaiming its obligation to arbitrate under the Agreement."); *World Omni Financial Corp. v. ACE Capital Re Inc.*, 64 Fed. Appx. 809, 813 (2d Cir. 2003) (where nonsignatory "consistently charged defendants with also breaching" the agreement containing the arbitration clause, the nonparty was "estopped from denying a duty to arbitrate."). Here, since Arche claims breaches of the XE-R Agreement, it cannot circumvent the arbitration provision by claiming it is suing on the NPA.

Arche also argues that it cannot be compelled to arbitrate under the incorporation by reference theory because the NPA provides for litigation in New York State or Federal Court. (Pl.'s Mem., p. 15.) This provision does not insulate a non-signatory from arbitration. *Clarendon Nat'l Ins. Co. v. Lan*, 152 F. Supp. 2d 506 (S.D.N.Y. 2001) (unless the provision specifies an exclusive forum and preference for litigation, a non-signatory will still be compelled to arbitrate).

Arche's contention that the "whole agreement" or "totality of obligations of the signatory party" must be incorporated (Pl.'s Mem., p. 15), is also misplaced. In any event, the NPA does

incorporate all the terms of the XE-R Agreement. (*See* XE-R Agreement, § 11(d).) Further, it is enough for a party to be compelled to arbitrate where it is a signatory to an agreement that incorporates by reference other agreements. *Clarendon Nat'l Ins. Co.*, 152 F. Supp. 2d at 520 ("A nonsignatory ... can be compelled to arbitrate when [it] is a party to a separate contractual relationship with the signatory to the ... agreement which incorporates the existing arbitration clause.").

Finally, even if the Court determines that the alleged breaches of the XE-R Agreement should be adjudicated here, Arche has not raised any triable issues with respect to any such alleged breach. First, Arche asserts that breaches of § 3.6(a)(iv) of the XE-R Agreement by the majority member of XE-R triggered a default under § 11(d) of the NPA. (*See, e.g.*, Pl.'s Mem., pp. 8-9.) As a preliminary matter, even if there were breaches by the majority member of XE-R, such conduct would not trigger a default because such a default is triggered only where the "Company" breaches, and Arche is only claiming a breach by the majority member.[4]

As support for its claim of a breach under § 3.6(a)(iv), Arche attempts to "create" a factual issue by characterizing the Jenkins transaction as a wholesale transaction. (Pl.'s Mem., p. 5.) As a preliminary matter, and as explained in the accompanying Ross Affidavit, the transaction was direct and not wholesale. (Ross Aff., ¶ 4.) Indeed, *even if* the original Jenkins

---

[4] "An 'Event of Default' shall exist if ... the Company defaults in the performance of or compliance with ... any other Transaction Document and such default is not remedied within 30 days ... ." NPA § 11(d).

premium finance loan was a wholesale transaction, the settlement brokerage agreement *is not* such a transaction. (Ross Aff, ¶ 5.)[5]

Most important – and this point is not contested – even if there was a question as to whether the transaction was wholesale or direct (*see* Pl.'s Rule 56.1 Counter-statement, ¶¶ 26-28), that would not create a dispute *as to a material fact* because XE-R will receive 100% of MR&Co.'s commissions in connection with any settlement.[6] In sum, XE-R will receive all of the benefit of any settlement brokerage of the Jenkins policy, and there has been and can be no breach as a matter of law.

## CONCLUSION

For the reasons and on the authorities set forth above and in Defendant's moving papers, as well as in all prior proceedings had herein, XE-R respectfully requests that its motion for summary judgment and/or to stay litigation pending arbitration be granted in its entirety.

---

[5] Arche's plea for discovery to "investigate" MR&Co.'s claim of privity is likewise irrelevant, since Arche cannot and does not show that the settlement brokerage agreement at issue is a wholesale transaction, or that the nature of the transaction as wholesale would create a material issue of fact. Further, the Ross Affidavit puts this bogus "issue" to rest. (Ross Aff., ¶¶ 4, 5.)

[6] Arche's use of the preliminary injunction decision in the State court action brought by XE LIFE as evidence that MR&Co. "improperly intrud[es] upon business relationships" (Pl.'s Mem., pp. 11-12) is a desperate attempt to find an issue of material fact where there is none. That court's recent decision denying XE LIFE's motion to dismiss XE-R's breach of contract counterclaim clarifies that XE-R, and not XE LIFE, may possess the brokerage rights at issue there, and, thus, that XE-R's claim to such rights is appropriate. In any event, Arche's reliance on the allegations, speculation and conjecture of its affiliate in that action are all insufficient to create an issue of material fact. *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 754 (S.D.N.Y. 1990) (citing *Univ. of TX v. Camenisch*, 451 U.S. 390, 395 (1981)) ("findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits"); *Walker Memorial Baptist Church v. Saunders*, 285 N.Y. 462 (1941) ("issues must be tried to the same extent as though no temporary injunction had been applied for").

Dated: New York, New York
July 3, 2007

                    KENT, BEATTY & GORDON, LLP

By: *Jack A. Gordon* (signature)
Jack A. Gordon, Esq. (JG 0536)
Abbey Green, Esq. (AG 9293)
425 Park Avenue, The Penthouse
New York, NY 10022
(212) 421-4300

*Attorneys for Defendant,
XE-R, LLC*